2010 WY 168

**Dave T. HELM and Van E. Helm, Appellants (Plaintiffs),**

v.

**Ken CLARK, Trustee, or his successor in trust, under the Ken Clark Living Trust dated March 28, 2006, Appellee (Defendant).**

No. S–10–0002.

Supreme Court of Wyoming.

Dec. 21, 2010.

---

Representing Appellants: Joseph B. Bluemel of Bluemel Law Office, Kemmerer, Wyoming.

Representing Appellee: Jack D. Edwards of Edwards Law Office, P.C., Etna, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] This case involves a dispute between adjoining property owners in Lincoln County, Wyoming. David T. Helm and Van E. Helm (the Helms) attempted to relocate a fence which for many years had separated their pasture from a pasture belonging to Ken Clark, Trustee of the Ken Clark Living Trust. The fence was south of the recorded property line between the Helms' property and Mr. Clark's property. Mr. Clark objected and claimed that he had acquired title to the property between the recorded boundary and the fence by adverse possession. After a bench trial, the district court quieted title to the property in Mr. Clark. On appeal, the Helms claim the district court committed various errors in arriving at its decision.

[¶ 2] We conclude the district court correctly ruled that Mr. Clark had proven his claim for adverse possession of the disputed tract; however, the district court's decision as to the size and exact location of the disputed area is clearly erroneous. Therefore, we affirm in part, but reverse and remand for a determination of the exact legal description of the adversely possessed property.

**ISSUES**

[¶ 3] The Helms' statement of the issues is repetitive, so we rephrase the issues as follows:

1. Whether the district court's findings of fact that Mr. Clark had established a case for adverse possession[1] were clearly erroneous or contrary to the great weight of the evidence when:

a. There was no evidence of "the definitive location, course or continuity of the fence" and "many facts material to proving adverse possession [were] absent or lacking;"

b. The trial court specifically found Mr. Clark "admitted the north-south fence on the east boundary of the area being adversely possessed until 1999 was a fence of convenience;" and

c. The "evidence clearly shows the north-south fence on the east boundary of the property claimed to be adversely possessed was moved in 1999 or only eight years before this matter ensued."

2. Did the district court err by failing to rule that Mr. Clark was estopped from arguing that the Clark/Helm fence was a boundary fence because members of his family had admitted that the north-south fence on the

---

1. In addition to ruling that Mr. Clark was entitled to have title to the disputed property quieted in him on the basis of adverse possession, the district court ruled that the doctrine of recognition and acquiescence justified quieting title in Mr. Clark. *See, e.g., Kimball v. Turner,* 993 P.2d 303 (Wyo.1999); *Sowerwine v. Nielson,* 671 P.2d 295 (Wyo.1983). Because our ruling on adverse possession is dispositive, we will not separately discuss recognition and acquiescence.

east boundary of the property was a fence of convenience?

Mr. Clark's statement of the issues is more general.

## FACTS

[¶ 4]   In this section, we will set out only the basic facts underlying the dispute.  More details will be provided as necessary to analyze the specific legal issues in the "Discussion" section of this opinion.  Mr. Clark and the Helms own adjoining agricultural properties in the NE ¼ of Section 12, Township 30 North, Range 119 West, 6th P.M., in Lincoln County, Wyoming.  The properties have been in the Clark and Helm families since the 1920s.  Mr. Clark's property is north of the Helms' and their respective deeds indicate that the sixteenth section line dividing the NE ¼ and the SE ¼ of the NE ¼ of Section 12 forms their property line, i.e., Mr. Clark owns the NE ¼ NE ¼ and the Helms own the SE ¼ NE ¼. A fence between the properties was built long ago and is south of the actual property line, meaning that part of the Helms' property is fenced in with Mr. Clark's property.[2]

[¶ 5]   The Helms decided to move the fence to place it on the property line.  Mr. Clark objected, and the Helms filed an ejectment action on October 25, 2007.  Mr. Clark counterclaimed alleging that he had acquired title to the property north of the fence by adverse possession.  The district court held a bench trial and ruled that Mr. Clark had proven the elements of adverse possession and the Helms had not provided a sufficient explanation to establish that Mr. Clark's use was permissive.  Consequently, the trial court quieted title in Mr. Clark.  The Helms appealed.

## STANDARD OF REVIEW

[¶ 6]   We review a district court's decision following a bench trial by utilizing the following standards:

The factual findings of a judge are not entitled to the limited review afforded a jury verdict.  While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record.  Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence.  Findings of fact will not be set aside unless they are clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo. 2006) (citations omitted).  *See also, Addison v. Dallarosa–Handrich,* 2007 WY 110, ¶ 8, 161 P.3d 1089, 1091 (Wyo.2007).

*Cook v. Eddy,* 2008 WY 111, ¶ 6, 193 P.3d 705, 708 (Wyo.2008).  In considering a trial court's factual findings,

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.  We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.,* quoting, *Mullinnix,* ¶ 12, 126 P.3d at 916 (citations omitted).  The district court's conclusions of law are reviewed *de novo.  Id.*

## DISCUSSION

[¶ 7]   The Helms initially filed an action to have Mr. Clark ejected from their property pursuant to Wyo. Stat. Ann. § 1–32–202 (LexisNexis 2009).[3]  They claimed that they held legal title to the property to the six-

---

2.  Mr. Clark actually owns the N ½ NE ¼ of Section 12.  The Mack Group, LLC owns the property immediately to the west of the Helms' property, the SW ¼ NE ¼. The fence separating the Mack Group and Clark properties is also off line, although not as far as the Clark/Helm fence. The Mack Group participated in this action in the district court, and the court determined that

Mr. Clark had adversely possessed the Mack Group property which had been fenced in with his property and quieted title in favor of him. The Mack Group did not appeal from the district court's determination.

3.  Section 1–32–202 states:

teenth section line and Mr. Clark was unlawfully denying them possession. Mr. Clark asserted that he had been in possession of the property north of the fence for more than ten years and the Helms were barred from recovering the property under Wyo. Stat. Ann. § 1–3–103 (LexisNexis 2009).[4] He counterclaimed to have title to the property north of the fence quieted in him on the basis of adverse possession. Wyo. Stat. Ann. § 1–32–201 (LexisNexis 2009).[5]

■■■■ [¶ 8] " 'In order to establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title.' " *Addison v. Dallarosa-Handrich*, 2007 WY 110, ¶ 11, 161 P.3d 1089, 1091 (Wyo.2007), quoting *Gillett v. White*, 2007 WY 44, ¶ 15, 153 P.3d 911, 915 (Wyo.2007). *See also, Cook*, ¶ 7, 193 P.3d at 708. Our test for adverse possession imposes shifting burdens upon the parties.

> When there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. However, if a claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession.

*Addison*, ¶ 11, 161 P.3d at 1091–92, quoting *Gillett*, ¶ 15, 153 P.3d at 915 (citation omitted).

*Cook*, ¶ 7, 193 P.3d at 708.

### A. Prima Facie Case for Adverse Possession

■■■■ [¶ 9] The district court ruled that Mr. Clark had established a prima facie case of adverse possession and shifted the burden to the Helms to explain the possession. On appeal, the Helms make a cursory attempt to show the district court incorrectly determined that Mr. Clark had established a prima facie case for adverse possession. They assert the district court failed to give proper weight to the facts that they paid taxes on the disputed property and Mr. Clark and his predecessors had executed title instruments affecting their deeded property but had not executed any such instruments affecting the disputed area. In certain cases, each of these factors may be important in determining whether possession is adverse. *See, e.g., Braunstein v. Robinson Family Limited Partnership, LLP*, 2010 WY 26, ¶ 18, 226 P.3d 826, 833–34 (Wyo.2010). However, as the district court recognized, the fact that Mr. Clark had not paid taxes on the property is typical when a case involves use to a fence line. *See, e.g., Cook*, ¶ 22, 193 P.3d at 712; *Doenz v. Garber*, 665 P.2d 932, 937 (Wyo.1983). The claimant's failure to execute title instruments affecting the disputed property also is not unusual in fence line adverse possession cases. *Id.* Although these facts weigh against a finding of adverse possession, they are not necessarily determinative. *Id.*

■■■■ [¶ 10] The district court considered all of the evidence and found Mr. Clark had established a prima facie case of adverse possession because the disputed area had been enclosed by a fence with Mr. Clark's property for a very long time, Mr. Clark had used the disputed property for grazing livestock during that time, and the Helms were aware of the discrepancy between the fence and the true boundary. The district court's

---

In an action to recover real property it is sufficient if the plaintiff's petition states that he has a legal estate in and is entitled to possession of the real property, describing the same with sufficient certainty as to enable an officer holding an execution to identify it, and that the defendant unlawfully keeps him out of possession. It is not necessary to state how the plaintiff's estate or ownership is derived.

4. Section 1–3–103 states: "An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten (10) years after the cause of such action accrues."

5. Section 1–32–201 states:

An action may be brought by a person in possession of real property against any person who claims an estate or interest therein adverse to him, for the purpose of determining the adverse estate or interest. The person bringing the action may hold possession himself or by his tenant.

decision is consistent with prior cases where we have stated that enclosing land in a fence may be sufficient to "raise the flag" of an adverse claim, and "[t]he pasturing of animals within a substantial enclosure is sufficient to establish the elements of adverse possession." *Hillard v. Marshall,* 888 P.2d 1255, 1259 (Wyo.1995).

[¶ 11] In many respects, this case is similar to *Cook,* ¶ 18, 193 P.3d at 711, where we held that the district court properly ruled the claimant had established a prima facie case of adverse possession to the fence line by showing exclusive possession of the property for the statutory period. There, we noted the facts that the record title owner paid taxes and included the disputed property in mineral leases did not undermine the district court's finding that the claimant had met his burden of proving adverse possession. *Id.,* ¶ 22, 193 P.3d at 712. The district court's findings of similar facts in this case were sufficient to support the conclusion that Mr. Clark had established a prima facie case for adverse possession. Those findings are supported by the record and are not clearly erroneous.

## B. Boundary Fence or Fence of Convenience

[¶ 12] After Mr. Clark presented his prima facie case for adverse possession, the burden shifted to the Helms to explain Mr. Clark's possession of the disputed area. They attempted to show that his use of the property was permissive because the fence was located off the property line as a matter of convenience. The placement, type and purpose of a fence are important factors in adverse possession cases. A fence which is intended to be the boundary between properties supports a claim for adverse possession. On the other hand, a fence that is placed in a certain location in order to separate pastures or irrigated meadows from grazing land or because the terrain makes it easier to build the fence in that location rather than on the property line is a fence of convenience. When a fence is located off the property line as a matter of convenience, use by the neighbor is considered permissive and will defeat a claim for adverse possession.

*Braunstein,* ¶ 18, 226 P.3d at 833–34; *Cook,* ¶¶ 9–10, 193 P.3d at 709; *Hillard,* 888 P.2d at 1259; *Davis v. Chadwick,* 2002 WY 157, ¶ 9, 55 P.3d 1267, 1270–71 (Wyo.2002). The determination of whether a fence establishes a property boundary or is one of convenience is a question of fact. *Id.See also, Hovendick v. Ruby,* 10 P.3d 1119, 1123 (Wyo.2000).

[¶ 13] The district court rejected the Helms' argument that Mr. Clark's use was permissive and ruled the evidence supported a finding that the fence was a boundary fence rather than a fence of convenience:

[T]he Clark–Helm fence ... was [not] built as an interior fence. The land on either side of the fence is similar in nature requiring no separation due to the nature of the land. The fence runs from where it intersects with Section 7 [on the east] in a straight line west over a ridge. Once it goes over the ridge it runs through mixed aspen and evergreen timber where its course meanders somewhat and trees are occasionally used as fence posts. But it is substantial in that it consists of five barbed wires. It runs through serviceberry bushes in places and the wire is off the posts in places in the spring. Trees have fallen over the fence in places. This is the normal condition of a longstanding fence enclosing pasturelands that are located in standing timber and subject to heavy snows. The fences needed to be repaired in the spring as Mr. Clark testified. This does not convert a boundary fence into a fence of convenience.

[T]he Court finds that the Clark–Helm fence was constructed in the 1920's on a line that ran more or less straight consistent with the fence line located in the south boundary of [the adjacent property to the east in Section 7].... The nature of this fence is consistent with a boundary fence. It is of the same type, if not better, ... as that fence [on the west side of the Helms' property] and a better fence than the Helms' southern boundary fence. It was assumed to be on the surveyed line until about 1968. It is typical of the boundary fences that the Helms and Clarks had even though it may not have been built to modern standards. From 1968 onward the

Plaintiffs Helms were aware the Clarks were possessing their property on the other side of the fence yet they failed to take action to stop this possession.

[¶ 14]   The Helms challenge the district court's finding that the fence was a boundary fence, claiming that Mr. Clark and his predecessors admitted, in a related matter, that a different fence on the eastern boundary of the disputed area was one of convenience.   During the trial, the Helms asked the district court to take judicial notice of the record in a case involving a property line dispute between Mr. Clark and his neighbors to the east in Section 7, Township 30 North, Range 118 West, 6th P.M., Lincoln County, Wyoming, Kenneth and Meleese Nebeker.   Mr. Clark's father and uncle filed an affidavit in that case.   They averred that the Clark/Nebeker fence was off the property line (it was located west of the actual property line so that part of Clark's property was fenced in with Nebekers' property); their father, Ernest L. Clark, had owned the lands on both sides of the fence in Sections 7 and 12; and the "fence was originally put in as a fence of convenience between farm land and hill pasture."   The Clark/Nebeker dispute was eventually settled and the fence was moved to the east in the late 1990s.

[¶ 15]   The district court addressed the Clark/Nebeker matter in its decision letter:

The third evidentiary issue is the Plaintiffs' request for the Court to take judicial notice of an affidavit signed by Kenneth Clark [sic] claiming a north-south fence between Sections 7 and 12 was a fence of convenience because it was not on the surveyed line.   This is offered by Plaintiffs as an admission by inference that the east-west Clark–Helm fence line is also a fence of convenience.   This issue arose during trial and evidently was not disclosed in discovery.   The affidavit originated in a case that was settled and there was no decision issued that made a factual finding that it was a fence of convenience so that it could collaterally estop Ken Clark from denying the north-south fence line was a fence of convenience.

The Court will construe Mr. Clark's statement as an admission that the fence along that north-south section line was a fence of convenience.   This is a reasonable assumption because Ernest L. Clark had [previously] owned the property on both sides of the line, i.e., [in both sections 7 and 12].   There was no need to have the fence on the exact boundary line because he owned both sides.   It appears to separate his farm land from his pastureland.   The admission goes no further than that and is not an admission that the Clark–Helm fence was a fence of convenience.   The situations are entirely different and carry no weight in determining if the Clark–Helm fence is a fence of convenience.

[¶ 16]   The Helms assert the district court erroneously determined that the admission regarding the Clark/Nebeker fence was not relevant in this case.   As the district court recognized, the two cases involved different fences.   Mr. Clark's predecessor had once owned the two properties at issue in the Clark/Nebeker matter and the fence was built by a common owner to separate different types of land.   The Clark/Helm fence was built to separate two landowners rather than different types of land.   The district court's finding that the admission was not relevant to the present dispute was consistent with the evidence and was not clearly erroneous.

[¶ 17]   The Helms also assert the district court erred by not recognizing that the doctrine of collateral estoppel prohibited relitigation of the issue of whether the Clark/Helm fence was one of convenience or a boundary fence.   The elements of collateral estoppel are:

(1) the issue decided in the prior adjudication is identical with the issue presented in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Hutchins v. Payless Auto Sales, Inc.*, 2004 WY 22, ¶ 15, 85 P.3d 1010, 1013 (Wyo.2004), quoting *Pokorny v. Salas*, 2003 WY 159, ¶ 15, 81 P.3d 171, 175 (Wyo.2003). We need not spend much time on the collateral estoppel analysis. It is clear that the issue presented in the Clark/Nebeker matter was different from the issue presented here. As we stated above, the two cases involved different fences and different situations.[6] The district court correctly ruled the Clarks' admission that the Clark/Nebeker fence was a fence of convenience did not have any preclusive effect in the present case.

### C. Nature and Location of Fence/Disputed Area

[¶ 18] The Helms challenge the district court's rulings about the nature and location of the Clark/Helm fence. First, they assert the evidence did not establish that the fence was continuous from the eastern border to the western border of the Clark and Helm properties. The district court found that as the fence proceeds west from the eastern border, it generally runs in a straight line until it enters the timber, where "its course meanders somewhat," even using trees as fence posts at times. The trial evidence demonstrated that in some places along its course, the fence line proceeds through timber and dense undergrowth. David Helm testified that it was difficult to follow the fence line in spots because of the vegetation. However, the trial evidence also established that it is a substantial fence, including several barbed wires and gates, Mr. Clark maintained it each spring, and it effectively contained livestock. This evidence is sufficient to support the district court's findings that the Clark/Helm fence was continuous.

[¶ 19] The Helms also contest the lack of evidence about the exact location of the fence and, accordingly, the disputed property. Although the record contains am-

ple evidence that the parties and the district court understood the disputed area was that between the recorded property line and the fence, the evidence did not include a survey of the fence or a legal description of the disputed area. An advance plat, which stated that it was "subject to correction and approval" and apparently was not recorded, was admitted into evidence at the trial as Plaintiffs' Exhibit 2. The advance plat showed the recorded property line, the disputed area and the "approximate location of the existing fence line;" however, the fence line was not surveyed and was placed on the map for illustration purposes only. The parties stipulated that, at the eastern boundary, the Clark/Helm fence was approximately 294 feet south of the recorded property line. The record does not, however, contain evidence of the measurements of the disputed area as the fence continued to the west.

[¶ 20] Despite the lack of evidence of the exact location and size of the disputed area, the district court concluded:

> The net result is that Defendant Ken Clark and his predecessors have adversely possessed land located north of the fence lines that are the focus of this dispute, the land being of a dimension 235 feet by 1320 feet titled in the Helms[.]

The trial evidence does not support the district court's conclusion because the parties stipulated that the fence was 294 feet off line at the eastern boundary, not 235 feet as the district court found, and there was no evidence as to the measurements of the disputed tract as it continued westward. Given the evidence that the fence meandered, the simple rectangular description given by the district court is not supported by the record.

[¶ 21] An adequate legal description is required in adverse possession cases. *See, e.g., Inserra v. Violi*, 267 Neb. 991, 679 N.W.2d 230 (2004) and cases cited therein; *Trinity River Authority v. Hughes*, 504 S.W.2d 822 (Tex.Civ.App.1974). As a prac-

*See, e.g., Wilson v. Lucerne Canal & Power Co.*, 2007 WY 10, ¶ 26, 150 P.3d 653, 663 (Wyo.2007). For the same reason we rejected the Helms' collateral estoppel argument, i.e., the issues are not the same, the doctrine of judicial estoppel does not apply here.

tical matter, without a sufficient legal description, the county clerk will not be able to record the quiet title order and such order will not provide public notice of the ownership of the disputed parcel. Our statutes setting forth the requirements for conveyances of real property interests demonstrate the need for a proper legal description in matters of title to property. *See, e.g.,* Wyo. Stat. Ann. §§ 34–2–102 (warranty deed); 34–2–104 (quitclaim deed); 34–1–121 (LexisNexis 2009) (recorded instrument as notice).

[¶ 22] The failure to provide a proper legal description does not, however, undermine the district court's ultimate finding that Mr. Clark proved he adversely possessed the property and was entitled to have title quieted in him. This is true because the parties and the court knew the general location of the property and "[o]nce all the elements of adverse possession are met, the possessor is vested with a fully new and distinct title. No judicial action is necessary." *Murdock v. Zier,* 2006 WY 80, ¶ 17, 137 P.3d 147, 152 (Wyo.2006). *See also, Doenz,* 665 P.2d at 935; *Stryker v. Rasch,* 57 Wyo. 34, 51, 112 P.2d 570, 577 (Wyo.1941). Thus, the proper remedy in this case is to remand for a determination by the district court of the actual legal description of the property adversely possessed by Mr. Clark.

[¶ 23] One other issue is raised by the Helms. The record is not very clear on this matter, but the documents from the Clark/Nebeker case and the testimony about those documents suggest that, until sometime in the late 1990s, part of the Helms' property near their northeastern boundary was actually fenced out of Mr. Clark's pasture. The Helms claim the affected area was a small "sliver" of land measuring approximately 50 to 60 feet. The Clark/Nebeker fence was apparently moved to the east in the late 1990s, which caused that portion to be included in Mr. Clark's pasture. The Helms argue, therefore, that Mr. Clark did not meet the ten year statutory requirement for proving adverse possession of this small area. The district court did not make any findings as to the effect of the placement and subsequent relocation of the eastern boundary fence on Mr. Clark's adverse possession claim against the Helms. Because of the imprecision of the discussion of this issue in the record and the fact that Mr. Clark does not address this aspect of the Helms' appeal at all, we do not know whether the evidence supports the Helms' position or whether this aspect of the case was even properly presented to the district court. Consequently, on remand, while determining the exact location of the adversely possessed area, the district court is also charged with determining whether the relocation of the Clark/Nebeker fence had any effect on the disputed area.

[¶ 24] Affirmed in part and reversed and remanded in part for proceedings consistent with this decision.

