# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 16

**OCTOBER TERM, A.D. 2022**

**February 14, 2023**

DWIGHT LYMAN and BETTY L. LYMAN, as individuals and as Trustees of the Dwight Lyman Living Trust dated November 11, 2016, and Trustees of the Betty L. Lyman Living Trust dated November 11, 2016,

Appellants
(Plaintiffs),

v.

ROBERT B. CHILDS, individually and as Trustee of the Robert B. Childs Living Trust dated April 4, 2012,

Appellee
(Defendant).

S-22-0183

*Appeal from the District Court of Johnson County*
*The Honorable William J. Edelman, Judge*

*Representing Appellants:*
> *Mitchell H. Edwards, Nicholas & Tangeman, LLC, Laramie, Wyoming; Marshall E. Keller, Keller Law Firm, P.C., Thermopolis, Wyoming. Argument by Mr. Edwards.*

*Representing Appellee:*
> *Jay A. Gilbertz, Yonkee & Toner, LLP, Sheridan, Wyoming.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Dwight and Betty Lyman filed an adverse possession claim to approximately 100 acres of their northern neighbor's deeded property in the Bighorn Mountains. Since the 1950s, the Lymans' fence has enclosed portions of Mr. Childs' deeded property within the Lymans' property. The district court found the fence was a fence of convenience and the Lymans did not adversely possess the disputed property because their use was presumptively permissive. The Lymans appealed, and we affirm.

## ISSUES

[¶2]   There are four issues on appeal:

1.     Was the district court's finding that the fence enclosing portions of Mr. Childs' deeded property was a fence of convenience clearly erroneous?

2.     Did the district court err in ejecting the Lymans from the disputed parcels?

3.     Did the district court err in determining the Lymans trespassed on the disputed parcels?

4.     Did the district court abuse its discretion by allowing opinion testimony from a lay witness pursuant to Wyoming Rule of Evidence 701?

## FACTS

[¶3]   This dispute arose over a fence dividing two neighbors, the Lymans to the south and Mr. Childs to the north. The Lymans' fence enclosed roughly 100 acres of land deeded to Mr. Childs and his predecessors.

[¶4]   Blaine Lyman, the uncle of Appellant Dwight Lyman, first acquired the Lyman property, 640 acres that sits south of the fence line in dispute, in 1931. In 1950, Blaine Lyman and his wife Blanche sold the property to Alton and Arthenia Lund (Lunds) but retained the right to use a one-room cabin on the property. Sometime thereafter, the Lunds passed the property to Violet Lund, who conveyed the property to the Appellants, Dwight and Betty Lyman (Lymans), in August 1993 via warranty deed. She also conveyed the SE¼SW¼ of Section 3 (Parcel 1) to the Lymans via quitclaim deed (see Fig. 1). The Lunds had never acquired Parcel 1 by deed but claimed an interest "under a claim of adverse possession due to the existence of a fence line around said property for numerous years." The Lymans recorded the warranty deed for the deeded property and a

1

contract for deed that stated the Lunds would convey Parcel 1 to the Lymans upon full payment. The Lymans never recorded the quitclaim deed for Parcel 1.

**Fig. 1:** Parcel Number Map



Fig. 1. Parcels 1, 3, 4, 5, and 7 are the disputed parcels deeded to Mr. Childs but fenced into the Lymans' property. Parcel 7 is identified by the arrow. The parcel numbers were assigned at trial to provide clarity and are not historically significant.

[¶5]  Mr. Childs' property was first acquired by Edwin Burritt in 1931 and the property changed hands multiple times before it was conveyed via warranty deed to Jack and Barbara Marton in 1993. Jack Marton conveyed the property in October 2010, to Golden Trout, LLC, which was owned by the Weinhandls.[1] The Weinhandls eventually sold the property to Mr. Childs in July 2019.

[¶6]  The two properties are mountainous, heavily forested in areas, and primarily used for ranching and recreational purposes. The fence in dispute was erected in the 1950s by Blaine Lyman and has not moved since Dwight Lyman first observed it in the 1950s. It is a sheep-tight fence that consists of mesh wire on the bottom and two barbed wires on top. The fence does not follow the exact deeded boundary of the properties, instead it meanders through forested areas and generally avoids large changes in elevation. The Lymans assert this fence was built to be a boundary between the properties and they adversely possessed Parcels 1, 3, 4, 5, and 7. Mr. Childs contends the fence was built for convenience, which defeats the adverse possession claim.

---

[1] Jack and Barbara Marton divorced during their property ownership and Barbara conveyed her interest to Jack, who became the sole owner of the property.

[¶7]   In 2018, individuals were hunting with the Lymans' permission on Parcel 5, via a rough road. The Weinhandls' hunters blocked the road with tree trunks to stop the Lymans' hunters from accessing the property. A dispute arose and Wyoming Game and Fish was called, but the dispute ended without trespassing citations being issued. Mr. Weinhandl and Mr. Lyman eventually met to discuss a trespassing agreement which allowed the Lymans and their hunters to use the access road through Parcel 5 to Parcel 1 which abutted public land. Mr. Lyman became agitated and quickly ended the meeting, saying his lawyer would review the agreement, but did not contend that he did not need permission to access the disputed lands. He never followed up on the issue.

[¶8]   Another dispute arose after Mr. Childs acquired the property. Mr. Childs installed a gate on the fence that allowed easier access to Parcel 1 from the north side of the fence. He later found the gate chained and locked, and called the sheriff's department, which instructed him to cut the lock. A year later and just after this lawsuit was filed, Mr. Childs found the gate locked again, this time with a cable and bolts, along with a note from the Lymans' counsel telling Mr. Childs to stay off the disputed lands.

[¶9]   Just prior to this dispute, Mr. Childs hired Rob Kay to fence the western boundary of Parcel 1, which was the deeded boundary between the Lymans' property and Mr. Childs' property. But the Lymans prohibited Mr. Kay from completing his fencing work by filing suit in June 2020 and requesting the district court quiet title in the disputed lands. The district court rejected their claims, finding the fence was built for convenience and the Lymans failed to meet their heightened burden of actual notice to Mr. Childs of their hostile use of the land. The Lymans appealed.

## STANDARD OF REVIEW

[¶10] When reviewing a district court's decision following a bench trial, we use the following standard of review:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that

the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed *de novo*.

*Fuger v. Wagoner*, 2020 WY 154, ¶ 8, 478 P.3d 176, 181 (Wyo. 2020) (quoting *Mattheis Co. v. Town of Jackson*, 2019 WY 78, ¶ 18, 444 P.3d 1268, 1275 (Wyo. 2019)).

## DISCUSSION

### I. The district court's finding the disputed fence was a fence of convenience was not clearly erroneous.

### A. Prima Facie Case for Adverse Possession

[¶11] The Lymans make two main arguments regarding their adverse possession claim. First, they argue that they have established a prima facie case for adverse possession and Mr. Childs did not rebut their claim. Second, they argue that even if the fence was a fence of convenience, they sufficiently raised their flag of hostile use and overcame the presumption of permissive use.

[¶12] An adverse possession claim creates several shifting presumptions. *See O'Hare v. Hulme*, 2020 WY 31, ¶ 20, 458 P.3d 1225, 1234 (Wyo. 2020); *Hillard v. Marshall*, 888 P.2d 1255, 1259-60 (Wyo. 1995). A presumption of ownership first rests with the record title holder unless and until the adverse claimant makes out his prima facie case of adverse possession. *Kudar v. Morgan*, 2022 WY 159, ¶ 14, 521 P.3d 988, 993 (Wyo. 2022) (citing *Little Med. Creek Ranch, Inc. v. D'Elia,* 2019 WY 103, ¶ 18, 450 P.3d 222, 228 (Wyo. 2019)). To establish a prima facie case, the claimant must demonstrate for a period of ten years, "actual, open, notorious, exclusive and continuous possession of the disputed parcel which is hostile and under claim of right or color of title." *Kudar*, 2022 WY 159, ¶ 15, 521 P.3d at 993 (quoting *Graybill v. Lampman*, 2014 WY 100, ¶ 27, 332 P.3d 511, 519 (Wyo. 2014)); *see also* Wyo. Stat. Ann. § 1-3-103 (2021). An adverse claimant must have "occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof . . . ." *Galiher*, 2018 WY 145, ¶ 15, 432 P.3d at 510 (quoting *Helm v. Clark*, 2010 WY 168, ¶ 8, 244 P.3d 1052, 1057 (Wyo. 2010)). Once a prima facie showing is made, the adverse claimant is entitled to a presumption of adverse possession and the burden shifts to the record title owner to explain or rebut the claim by showing the use was permissive. *Kudar*, 2022 WY 159, ¶ 16, 521 P.3d at 993 (citing *Little Med. Creek Ranch*, 2019 WY 103, ¶ 18, 450 P.3d at 228). One way to rebut a claim is to show a fence dividing two properties was a fence of

convenience, which creates a permissive use in the adverse claimant. *Id.* at 306 (citing *Hillard*, 888 P.2d at 1261). The showing shifts a heightened burden to the adverse claimant to prove he provided the record title owner with actual notice that he was claiming ownership of the property, and disavowing his use was permissive. *Id.* at 306 (citing *Hillard*, 888 P.2d at 1261).

[¶13] We begin with the presumption in favor of the record title holder which requires the adverse claimant to make a prima facie case of adverse possession. *O'Hare*, 2020 WY 31, ¶ 19, 458 P.3d at 1233. The district court found the Lymans initially established their prima facie case for adverse possession, but their permissive use under the fence of convenience doctrine defeated their claim. *See Kimball*, 993 P.2d at 305.

### 1. Actual Possession

[¶14] "No particular act is required to establish actual possession"; whether actual possession occurred depends on the nature and use of the land. *Graybill*, 2014 WY 100, ¶¶ 28-29, 332 P.3d at 520 (finding that maintaining and watering the disputed area, cutting hay, using it for family gatherings, and parking cars on the disputed area in a rural residential area was sufficient to show actual possession); *Davis v. Chadwick*, 2002 WY 157, ¶ 11, 55 P.3d 1267, 1271 (Wyo. 2002) (finding grazing livestock on the disputed parcel for the full growing season was adequate to satisfy the actual possession element). The district court found the Lymans had actual possession of the disputed parcels. The fence enclosed the disputed parcels since the 1950s, the Lymans began grazing livestock within the fence and on the disputed parcels from 1983 when they leased the property from the Lunds, and continued to graze livestock after they purchased the property in 1993. The Lymans routinely fished and hunted the disputed parcels, leased the land to other hunters, and their predecessors logged the disputed parcels in the 1980s. Based on these acts, the district court's finding of actual possession was not clearly erroneous.

### 2. Open and Notorious

[¶15] An adverse claimant must also demonstrate open and overt control or use of the property consistent with the type of land in dispute. *Graybill*, 2014 WY 100, ¶ 30, 332 P.3d at 520-21. Enclosure of land, as well as other overt acts, can satisfy this element. *Id.* at ¶¶30-31; *Davis*, 2002 WY 157, ¶ 9, 55 P.3d at 1270. Occupation of land may constitute sufficient open and notorious possession if it gives notice to the deeded landowner, but whether this occupation is sufficient to give notice is a question determined by the factfinder. *Graybill*, 2014 WY 100, ¶ 31, 332 P.3d at 521 (citing 3 Am.Jur.2d *Adverse Possession* § 60) (2013).

[¶16] The district court found the Lymans' fencing, grazing of livestock, no trespassing signs, and recreational uses of the property were sufficient to give notice to the deeded

landowners, Mr. Childs and his predecessors, of the Lymans' possession and use of the property. These findings are not clearly erroneous.

### 3. Exclusive

[¶17] An adverse claimant must show "an exclusive dominion over the disputed parcel and an appropriation of it to their own use and benefit." *Graybill*, 2014 WY 100, ¶ 33, 332 P.3d at 521. Such exclusive possession "does not mean absolutely exclusive, but only such use as would be 'expected of an owner under the circumstances.'" *Cook v. Eddy*, 2008 WY 111, ¶ 25, 193 P.3d 705, 713 (Wyo. 2008) (quoting *Davis*, 2002 WY 157, ¶ 15, 55 P.3d at 1273). "A record owner's use or access of disputed property does not undermine exclusivity when the use or access is 'nothing more than any neighboring landowner might do.'" *Woodward v. Valvoda*, 2021 WY 5, ¶ 23, 478 P.3d 1189, 1199 (Wyo. 2021) (quoting *Cook*, 2008 WY 111, ¶ 25, 193 P.3d at 713). The important determination is "the extent and nature of the enclosure of the disputed property. . . . [and] whether or not the land adversely claimed is enclosed in a manner that puts the title owner on notice of the adjoining landowners' adverse claim of ownership and the extent of that claim." *Graybill*, 2014 WY 100, ¶ 34 n.13, 332 P.3d at 521 n.13.

[¶18] Both parties, and Mr. Childs' predecessors in interest, testified to using the disputed parcels as their own and without permission. The district court found the fence and no trespassing signs were sufficient to establish exclusive possession of the property; they would put neighboring property owners on notice that they would be trespassing on Lyman property if they crossed the fence; the disputed parcels always appeared as part of the Lyman property due to the fence and grazing activities; and they did not openly share the property with anyone else. *See Graybill*, 2014 WY 100, ¶ 34, 332 P.3d at 521. The fence sufficiently, although not completely, excluded livestock on Mr. Childs' side of the fence from grazing the disputed property. The Lymans' use of the "disputed parcel is consistent with that which would ordinarily be exercised by an owner in using land to the exclusion of others." *Id.* The district court's finding of exclusive possession was not clearly erroneous.

### 4. Hostile and Under Claim of Right/Color of Title

[¶19] Hostile possession or use under a claim of right is an assertion of ownership so adverse to the rights of the record owner "that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant intends to possess the property as his own, and that the owner should take some action to protect his title." *Woodward*, 2021 WY 5, ¶ 27, 478 P.3d at 1200 (quoting *Galiher*, 2017 WY 31, ¶ 20, 391 P.3d at 1106) (emphasis omitted). Objective and manifest intent, rather than subjective intent, is required to show hostile possession by the adverse claimant. *Id.* (citing *O'Hare*, 2020 WY 31, ¶ 19, 458 P.3d at 1234). Hostile intent is not "akin to lining up Spartans at Thermopylae" but rather is "an assertion of ownership adverse to that of the record

6

owner." *Woodward*, 2021 WY 5, ¶ 27, 478 P.3d at 1200 (quoting *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522). Additionally, "[i]t has long been established in Wyoming . . . that, color of title is not necessary when there is actual possession." *Murdock v. Zier*, 2006 WY 80, ¶ 18, 137 P.3d 147, 152 (Wyo. 2006) (citing *Trefren v. Lewis*, 852 P.2d 323, 325-26 (Wyo. 1993)).

[¶20] The district court found the combination of the Lymans' fencing in the disputed property, grazing livestock, posting no trespassing signs, and using the property recreationally was sufficient to raise the flag of hostility and put a landowner on notice of the adverse party's claim. These findings were not clearly erroneous.

### 5. Continuous for Statutory Ten-Year Period

[¶21] Continuous possession for purposes of an adverse possession claim must be "for the statutorily required [ten-year] period, and that possession must be uninterrupted or maintained without break or interlude." *Woodward*, 2021 WY 5, ¶ 25, 478 P.3d at 1199 (citing *Graybill*, 2014 WY 100, ¶ 38, 332 P.3d at 522); Wyo. Stat. Ann. § 1-3-103 (2021). The district court found the Lymans "continuously maintained the historic fence and used the disputed parcels south of said fence for the statutory ten-year period" but did not specify the time period. The Lymans argue that the ten-year period of possession vested in 2003. The record supports the Lymans bought the property from Violet Lund in 1993 and possessed the property pursuant to the adverse possession elements for the ten-year statutory period, thereby vesting their claim in 2003. The district court's finding is not clearly erroneous.

[¶22] The district court concluded that the Lymans established a prima facie case of adverse possession. That finding was not clearly erroneous and the burden then shifted to Mr. Childs to rebut the presumption of adverse possession.

### B. Burden shifts to Mr. Childs to show permissive use.

[¶23] The district court's determination that the Lymans established a prima facie case of adverse possession shifted the burden to Mr. Childs. *Kimball*, 993 P.2d at 305-06. Mr. Childs was then required to show the Lymans' possession of the disputed property was permissive. *Id.* at 306. The district court found Mr. Childs properly rebutted the presumption, which the Lymans argue was a clearly erroneous finding.

7

### 1. Fence of Convenience establishes permissive use

[¶24] "In some circumstances, enclosing land in a fence is sufficient to 'raise the flag' of an adverse claimant." *Kimball*, 993 P.2d at 306 (citing *Meyer v. Ellis*, 411 P.2d 338, 343 (Wyo. 1966)). A fence kept for convenience, however, does not affect the true boundary between land. *Id.* (citing *Sowerwine v. Nielson*, 671 P.2d 295, 297 (Wyo. 1983)). A fence of convenience creates a permissive use by the non-record owner. *Id.*

### 2. Factors

[¶25] "[A] fence that is placed in a certain location . . . because the terrain makes it easier to build the fence in that location rather than on the property line is a fence of convenience." *Helm*, 2010 WY 168, ¶ 12, 244 P.3d at 1058. We have previously enumerated factors to consider when determining whether a fence is one of convenience. *See Kimball*, 993 P.2d at 306; *Cook*, 2008 WY 111, ¶ 14, 193 P.3d at 710-11. While not dispositive or exhaustive, a court may consider several factors in determining if a fence was built for convenience:

- The physical appearance of the fence;

- Whether the fence meanders or runs in a straight line;

- Whether the fence avoids obstacles and natural barriers;

- Whether trees, bushes, or natural objects are used as fencing material;

- Whether there was an obvious lack of intent strictly to follow platted or government description property lines;

- Changes in elevation on the deeded boundary compared to the fence line;

- Soil conditions or rockiness of the deeded boundary compared to the fence line;

- Ease of labor/cost of fencing the deeded boundary compared to the fence line; and

- The type of land the fence is dividing.

8

*Compare Kimball*, 993 P.2d at 306, *with Cook*, 2008 WY 111, ¶¶ 14-16, 193 P.3d at 710-11, *and Helm*, 2010 WY 168, ¶ 13, 244 P.3d at 1058-59; *see also Addison v. Dallarosa-Handrich*, 2007 WY 110, ¶ 20, 161 P.3d 1089, 1093 (Wyo. 2007). "When a fence is located off the property line as a matter of convenience, use by the neighbor is considered permissive and will defeat a claim for adverse possession." *Helm*, 2010 WY 168, ¶ 12, 244 P.3d at 1058.

[¶26] The district court findings in *Kimball* are comparable to the current situation:

> The physical appearance of the fence clearly demonstrates that it could not have been constructed as a boundary fence. To call the structure a fence is generous. It consists of 3 wires meandering between trees, bushes, and fence posts in an irregular fashion. It appears from the physical appearance that someone walked in the east-west direction stringing barbwire from tree to tree, placing fence posts when trees or bushes were not available. The irregular course of the fence clearly indicates that it was not constructed on a section line, a quarter[-]section line, or any other line of a U.S. governmental subdivision parcel. Even to a casual observer, it is obvious that whoever built the fence never intended to strictly follow the straight[-]line demarcation of a U.S. Government subdivision description.

993 P.2d at 306.

[¶27] The district court found the fence, as currently constructed, avoided natural barriers like trees, rocks, and more serious elevation changes as much as possible. The fence did not run in straight lines, and it changed directions for no other reason than the terrain allowed for it. It was a mesh fence with two barbed wires, often used trees and bushes as fence posts, and the irregular course of the fence clearly indicated it was not intended to follow property boundaries. *See Kimball*, 993 P.2d at 306. These findings were supported by maps, photographs and testimony from multiple witnesses. The district court held these factors weighed in favor of the fence being constructed for convenience.

[¶28] The parties introduced conflicting expert testimony on the ease or difficulty of fencing the deeded boundaries relative to the current location of the fence. Multiple witnesses for Mr. Childs testified the fence, as constructed, would have been easier to build and is easier to maintain in its current location, compared to the property boundary. Mr. Childs hired Rob Kay in July 2020 to fence the west side of Parcel 1, the deeded property boundary between Mr. Childs' property and the Lymans' property. Mr. Kay testified the west side of Parcel 1 would be very difficult to fence because of the steep,

rocky, and heavily timbered terrain. He further testified that the fence, as constructed, was in an easier and more convenient spot than fencing the property boundary on Parcel 1.

[¶29] Jason Rodriguez, a professional fencer and Mr. Childs' expert witness, testified similarly. Mr. Rodriguez testified that rocks, large elevation changes, and heavy timber are obstacles that make fencing projects much more difficult. He testified the location of the fence avoided timber, steep terrain, and rockiness on the property boundary.

[¶30] The district court gave greater weight to testimony from Mr. Rodriguez and Mr. Kay than testimony from the Lymans' expert, Stephen Anderson. Mr. Anderson testified in essence that it would have been easier to fence on the property boundary because the fence would have been straight, and a straight fence is easier to maintain than a meandering fence. Yet, Mr. Anderson's testimony focused on the fence after it was *installed* and the fact that it would be easier to *maintain* if on the property boundary. The issue in front of the trial court was whether the fence was easier to install in its current location or on the boundary line. The district court is entitled to considerable deference when weighing testimony and making credibility determinations. *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 15, 501 P.3d 1274, 1279-80 (Wyo. 2022) (citing *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822-23 (Wyo. 2018)). We see no basis to interfere with the district court's determination in this instance.

[¶31] The Lymans cite conflicting testimony from Mr. Marton who testified he told the Weinhandls when they were considering buying his property to treat the fence as a boundary fence. There was also language in the warranty deed from Mr. Marton to the Weinhandls that stated the conveyance of the property was "[subject to] discrepancies, conflicts in boundary lines, shortage in area, encroachments, and any facts which a correct survey and inspection of the premises would disclose[.]" But there was also testimony from Mr. Childs, the Weinhandls, and Mr. Marton that they consistently used the disputed parcels and, despite the fence, they were the rightful owners of the property. They moved freely between the properties and did not ask permission to do so. Additionally, there was ample testimony from experts and others, as well as photographs and maps, to support the district court's finding. We will not substitute the trial court's findings with our own unless they are unsupported by the record. *Fuger*, 2020 WY 154, ¶ 8, 478 P.3d at 181 (quoting *Mattheis Co.*, 2019 WY 78, ¶ 18, 444 P.3d at 1275).

[¶32] The district court relied on our precedent in *Kimball* and the photos, maps, and testimony presented at trial to determine the fence was a convenience fence. *See Kimball*, 993 P.2d at 306. It found the great weight of the evidence showed the fence was easier to build where it was located based on topography, natural obstacles, and other debris. Based on the appearance and treatment of the fence, this finding was not clearly erroneous, and Mr. Childs successfully rebutted the presumption of adverse possession by showing the Lymans' use was permissive. *Cook*, 2008 WY 111, ¶ 9, 193 P.3d at 709

(holding that a fence of convenience gives rise to permissive use thereby defeating an adverse possessor's claim); *Kimball*, 993 P.2d at 306-307.

[¶33] The Lymans alternatively argue that, even if a majority of the fence was a fence of convenience, Mr. Childs was obligated to prove each disputed parcel was enclosed by a fence of convenience rather than a boundary fence. We have previously held that a portion of property divided by a convenience fence can be adversely possessed while the rest of the property is found to be permissively used, yet such a finding is rare. *See Kimball*, 993 P.2d at 307; *Hillard*, 888 P.2d at 1261. In *Kimball*, we held the claimant adversely possessed one acre of the 7.3 acres in dispute. 993 P.2d at 304, 307. But there, it was the claimant's burden to prove the adversely possessed one acre was distinct and separate from the rest of the disputed property. *Id.* at 307-08; *see also Hillard*, 888 P.2d at 1261. That claimant, Mrs. Downes, did so by showing the property was used in a distinctly different way than the rest of the permissively used property. *Kimball*, 993 P.2d at 307. The one acre was used for residential purposes rather than the agricultural purposes of the other 6.3 acres, she built a home on the property, and fully fenced the one acre to exclude cattle from it. *Id.*

[¶34] The Lymans also argue that *Hillard* stands for the proposition each disputed parcel must be analyzed separately to determine if the fence was one of convenience. 888 P.2d at 1261. In *Hillard*, a sister and brother split land and erected a fence which did not accurately represent the boundary line. *Id.* at 1258. Both properties changed hands; Gary Marshall acquired and subdivided the sister's parcel, and Earl Hillard acquired the brother's parcel. *Id.* After Mr. Marshall subdivided his parcel and sold a portion to Thomas and Barbara Dennison, he obtained a survey that showed the original fence did not accurately represent the property boundaries. *Id.* Specifically, there was a fourteen-acre plot deeded to Mr. Marshall and a nine-acre plot deeded to the Dennisons, both enclosed by Mr. Hillard's fence. The two parcels were dissimilar in terrain and use and were non-contiguous. *Id.* at 1261. We held that due to the dissimilarities of use and physical characteristics of the land, the adverse claimant was required to separately establish his adverse possession of each parcel. *Id.*

[¶35] The Lymans are unable to show each parcel was used any differently than the next; every parcel on the Lymans' side of the fence was used for grazing and recreational purposes. As to Parcel 1, they assert the fence was relatively straight and close to quarter-section lines, creating the appearance the fence attempted to follow boundary lines. Building off the deeded boundary added roughly one-half mile of unnecessary fencing, the fence traversed large elevation changes, and battled rough and rocky terrain. They contend these characteristics, along with the relative ease of fencing the property line on the west boundary of Parcel 1, show this section of fence was clearly not constructed for convenience. This is not enough to show the district court's determination the fence was for convenience was clearly erroneous. Although the disputed parcels at issue were at

points non-contiguous, the parcels were separated by the same fence, were used in the same or similar ways, and had the same type of terrain.

[¶36] Testimony from Mr. Kay and Mr. Rodriguez both supported the finding the fence was easier to construct where it stood, and photographs and maps reinforced that conclusion. Without some showing the parcels were used in different manners or were in any way distinct from each other, the district court did not err in refusing to separately analyze each portion of the contiguous fence. *See Kimball*, 993 P.2d at 307; *Hillard*, 888 P.2d at 1261.

**C.     The Lymans must meet a heightened burden to show permissive use changed to hostile use.**

[¶37] Lastly, the Lymans argue that, if it was a fence of convenience, they possessed the property in a sufficiently hostile manner to revoke their permissive use and assert their ownership over the property. A fence of convenience creates a permissive use by the adverse claimant that heightens the burden of demonstrating hostility. *Kimball*, 993 P.2d at 306 (citing *Hillard*, 888 P.2d at 1261).

> "[I]n the absence of a clear, positive[,] and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile."

*Id.* Once the heightened burden of actual notice is established, the adverse claimant's declarations of hostility must inch closer to lining Spartans at Thermopylae. *See id.*; *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522.

[¶38] The issue, then, is whether the Lymans' actions were so manifest and notorious that Mr. Childs' predecessors had actual notice of the Lymans disavowing their permissive use of the property and asserting hostile possession. *See Kimball*, 993 P.2d at 306. As stated, the Lymans acquired a quitclaim deed from the Lunds for Parcel 1 but did not record the deed. Dwight Lyman did, however, record a contract for deed that listed the legal description for the deeded 640-acre property, as well as Parcel 1, agreeing to the conveyance of the property to the Lymans upon full payment of the purchase price. But the Lymans failed to prove this recording put Mr. Marton on actual notice of their hostile claim. In fact, both Mr. Weinhandl and Mr. Childs testified their title insurance determined the title to the property was clear, and no conflicting claims to the land existed. Additionally, the Lymans had recorded the warranty deed, and were well aware they needed to record the quitclaim deed but did not do so. The recording of the one deed

and one contract, and the failure to record the other deed, was not an act of hostility so open and notorious to presume actual notice. The Lymans failed to make any showing that the recorded contract put any owner on actual notice of their claims. The district court did not err in finding the recorded contract was not sufficiently hostile.

[¶39] The Lymans further argue that if the recorded contract was not sufficient to assert their hostile possession, the combination of the recorded contract for Parcel 1, their grazing practices, recorded timber purchase agreement, recreational activities, and subsequent quitclaim deed to the Lyman Trusts, gave Mr. Childs' predecessors actual notice. Our case law supports the conclusion these actions are insufficient to provide actual notice to the record owner.

[¶40] In *Addison*, the district court found that a fence of convenience was erected between two properties. 2007 WY 110, ¶ 21, 161 P.3d at 1093. The adverse claimant planted over 12,000 blue spruce trees on their deeded property and the disputed property. *Id.* at ¶ 4, 161 P.3d at 1090. Yet this act was not so open and notorious as to give actual notice of a hostile claim. *See id.* at ¶ 21, 161 P.3d at 1093.

[¶41] In *Kimball*, the district court found a fence that separated two parcels was a fence of convenience and the Kimballs did not adversely possess the disputed property. 993 P.2d at 307. Using the land to graze cattle was not sufficient to overcome the actual notice burden. *Id.* But the court also quieted title over one acre within the disputed parcel because the claimant had separately fenced one acre within it to prevent cattle from grazing, built a home on it, and used it in a different manner than the rest of the disputed property. *Id.* The Kimballs did not meet the heightened burden of hostility and notice by simply using the property as it had always been used, but "Downes acted in a manner that changed the use of the property from permissive to hostile." *Id.* Her possession of and acts upon the land was sufficient to meet her heightened burden to overcome the presumption of permissive use. *Id.*

[¶42] The Lymans used the property as it had always been used, predominantly ranching and recreation. They never asserted "a clear, positive, and continuous disclaimer and disavowal of the title of the true owner" or unfurled their flag of ownership as Mrs. Downes did in *Kimball*. 993 P.2d at 308. The Lymans were given several chances to assert such ownership and provide actual notice. After the hunting dispute, Mr. Weinhandl presented Mr. Lyman with a Trespassing Agreement that would allow the Lymans' hunters to access portions of the disputed property. Instead of asserting their ownership over the disputed parcels to Mr. Weinhandl, Mr. Lyman retreated from the conversation. Additionally, despite having a quitclaim deed to Parcel 1, the Lymans did not pay taxes on it for several years. And, although Mr. Lyman knew previous owners had accessed portions of the disputed property, he never confronted them to assert his ownership or deny them access.

[¶43] These facts support the district court's determination that the Lymans failed to unfurl their flag of ownership in a sufficient manner to put Mr. Childs or any of his predecessors in interest on actual notice of the Lymans' intent to claim the property as their own. The district court was not clearly erroneous when it found the fence was of convenience and it did not err in denying the Lymans' claim of adverse possession.

## II.     The district court did not err in ordering the ejectment of the Lymans.

[¶44] The adverse possession conclusion controls the outcome of the ejectment action. An ejectment action is codified in Wyo. Stat. Ann. § 1-32-202 (LexisNexis 2021):

> In an action to recover real property it is sufficient if the plaintiff's petition states that he has a legal estate in and is entitled to possession of the real property, describing the same with sufficient certainty as to enable an officer holding an execution to identify it, and that the defendant unlawfully keeps him out of possession. It is not necessary to state how the plaintiff's estate or ownership is derived.

[¶45] Mr. Childs successfully proved at trial he was the legal owner of the disputed parcels. He also proved he was wrongfully excluded from his property when, among other things, Mr. Lyman locked the gate on the north side of Parcel 1. The district court did not err in ejecting the Lymans from the disputed parcels.

## III.     The district court did not err in determining the Lymans trespassed on the disputed parcels.

[¶46] Trespass is defined as "invasions of the interest in the exclusive possession of land and in its physical condition." *Bellis v. Kersey* 2010 WY 138, ¶ 19, 241 P.3d 818, 824 (Wyo. 2010) (quoting *Edgcomb v. Lower Valley Power & Light*, 922 P.2d 850, 859 (Wyo. 1996)). To establish a claim for trespass, "a plaintiff must establish that the plaintiff's property has been physically impacted by someone or something." *Wilson v. Amoco Corp.*, 33 F.Supp.2d 969, 976 (D. Wyo. 1998). Without possession, one cannot bring a trespass claim. *Skane v. Star Valley Ranch Ass'n*, 826 P.2d 266, 269 (Wyo. 1992).

[¶47] The Lymans make two arguments: first, they were the rightful owners of the disputed parcels via adverse possession and Mr. Childs cannot bring a trespass claim on land he does not own; and second, even if they did not acquire the disputed parcels through adverse possession, their use was permissive under the fence of convenience doctrine, barring a trespass claim. *See Cook*, 2008 WY 111, ¶¶ 8-9, 193 P.3d at 708-09 (citing *Addison*, 2007 WY 110, ¶ 12, 161 P.3d at 1092); *see Roberts Const. Co. v. Vondriska*, 547 P.2d 1171, 1177 (Wyo. 1976) (holding a party cannot be liable for trespass until after a license to use the property is revoked); *Edgcomb*, 922 P.2d at 859

14

(holding permission is an absolute defense to trespass). The Lymans' first argument fails because Mr. Childs retained possession of the disputed parcels. *See Skane*, 826 P.2d at 269.

[¶48] The Lymans' use of the property was permissive up until the trespass notice issued by Mr. Childs' counsel dated July 28, 2020. *Cook*, 2008 WY 111, ¶ 8, 193 P.3d at 709 (citing *Addison*, 2007 WY 110, ¶ 12, 161 P.3d at 1092) (holding a fence of convenience gives the adverse claimant a permissive use of the property). The Lymans could be held liable for trespass after permission was revoked. *See Edgcomb*, 922 P.2d at 859, *Roberts Const.*, 547 P.2d at 1177.

[¶49] The Lymans also argue that, even if their use was not permissive, Wyoming is a fence-out state and they cannot be held liable for cattle on the unfenced parcels. *Braunstein v. Robinson Fam. Ltd. P'ship*, 2010 WY 26, ¶ 18, 226 P.3d 826, 834-35 (Wyo. 2010) (quoting *Martin v. Platte Valley Sheep Co.*, 76 P. 571, 574-75 (Wyo. 1904)). Yet such a rule cannot apply when Mr. Childs was precluded from fencing his portion of land because of the Lymans' legal proceedings. *See id.* (holding the fence-out rule applies "if [the landowner] *allows* it to remain unenclosed") (emphasis added). The district court properly concluded the Lymans trespassed on Mr. Childs' property after their permission to use the property was revoked.

## IV. *The district court did not abuse its discretion by admitting opinion testimony from a lay witness.*

[¶50] The Lymans argue that Mr. Graves' testimony should have been excluded as improper lay opinion testimony. "We review evidentiary rulings for abuse of discretion." *Baker v. State*, 2022 WY 106, ¶ 12, 516 P.3d 479, 481 (Wyo. 2022) (quoting *Klingbeil v. State*, 2021 WY 89, ¶ 32, 492 P.3d 279, 286 (Wyo. 2021)). "We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion." *Klingbeil*, 2021 WY 89, ¶ 32, 492 P.3d at 286 (*citing Spence v. State*, 2019 WY 51, ¶ 42, 441 P.3d 271, 282 (Wyo. 2019)). We need only determine that the district court could reasonably conclude as it did. *Id.* (citing *Hardman v. State*, 2020 WY 11, ¶ 11, 456 P.3d 1223, 1227 (Wyo. 2020)).

[¶51] Wyoming Rule of Evidence 701 allows lay opinion testimony if it meets three elements. First, the opinion is "rationally based on the witness's perception." Second, the opinion is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Third, it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The rules of evidence have been considerably relaxed pertaining to opinion evidence and "the rules should be liberally construed to allow the admission of such evidence." *Holiday v. Holiday*, 2011 WY 12, ¶ 18, 247 P.3d 29, 34 (Wyo. 2011) (quoting *McCabe v. R.A. Manning Constr. Co.*, 674 P.2d 699, 705 (Wyo. 1983)).

[¶52]  The Lymans assert Mr. Graves did not meet the first element of Rule 701, he had no personal knowledge of the construction and maintenance of the fence because he last observed the property thirty years ago. Mr. Graves' questioning was specifically based on his personal observations of the disputed fence and fencing in other areas of the Bighorns. Mr. Graves is a rancher in the area familiar with fencing projects and specifically observed the fencing on the disputed parcels throughout the years because he frequently pushed cattle through the area. He had personal knowledge of other fences in the Bighorns that were constructed off property lines for convenience reasons, had personal knowledge of the conditions and terrain of Parcel 1, and his testimony assisted in the determination of whether the fence was of convenience. *See Dixon v. State*, 2019 WY 37, ¶ 30, 438 P.3d 216, 229 (Wyo. 2019); *Roberts v. Roberts*, 2023 WY 8, ¶ 9, ___ P.3d. ____, ____ (Wyo. 2023) (holding opinion evidence must assist the trier of fact in understanding the evidence to be admissible).

[¶53] The Lymans argue Mr. Graves had not pushed cattle through the property in almost thirty years, making his testimony unreliable. But the fence has not moved since it was erected, therefore the length of time is immaterial to the admissibility of his testimony. *See Roberts*, 2023 WY 8, ¶ 17, ___ P.3d. at _____, _____ (holding once a preliminary determination of reliability is shown, weight of the testimony is left to the fact finder). Although his personal knowledge was not recent, he was familiar with the fence line, terrain, and neighboring properties. The Lymans' argument addresses the weight of the evidence, rather than its admissibility, and is therefore unpersuasive. *See id.*

[¶54]  The Lymans argue that Mr. Graves should not be allowed to testify to common practice or custom of ranching fences because he was not designated as an expert witness. Yet evidence of common practices in an industry need not be introduced exclusively by expert testimony. *See Dakota, Minnesota & E. R.R. Corp. v. Wisconsin & S. R.R. Corp.*, 657 F.3d 615, 619 (7th Cir. 2011) (allowing a lay witness to testify to common industry practice in a contract and trespass dispute between two railroad companies); *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 534 (7th Cir. 2003) (determining that an experienced businessman need not be qualified as an expert to give an opinion as to consumer's views of generic products). Mr. Graves' testimony did not fall within the purview of Rule 702 and therefore meets the three elements required for lay opinion testimony. *See* W.R.E. 701, 702.

[¶55]  Further, upon abuse of discretion review, even if the evidence was admitted in error, the Lymans are required to show prejudice. An error is deemed prejudicial if there is a reasonable probability that, if the evidence had not been admitted, the outcome would have been more favorable to the party opposing the evidence. *Spence*, 2019 WY 51, ¶ 11, 441 P.3d at 274; *Klingbeil*, 2021 WY 89, ¶ 32, 492 P.3d at 286. Mr. Childs presented testimony from Mr. Kay and Mr. Rodriguez, as well as photographs and maps of the disputed parcels that helped show the fence was for convenience. In its written findings,

the district court summarized testimony from six witnesses in eight pages of its Order when considering whether the fence was of convenience. Mr. Graves' testimony was summarized in one-half page. Most of the summary was cumulative of Mr. Kay and Mr. Rodriguez's testimony regarding the difficulty of fencing on the mountain and it was common for fences to be off the property boundary. Mr. Lyman is unable to show that without Mr. Graves' testimony, there was a reasonable probability of a more favorable outcome.

## *CONCLUSION*

[¶56]  The district court did not clearly err when it found the fence dividing the Lymans' property from Mr. Childs' property was a fence of convenience. The Lymans were unable to meet their heightened burden of actual notice to Mr. Childs that they were asserting possession of the land and no longer using it permissively. Without such a showing, the Lymans' adverse possession claim failed. The district court did not err in finding the Lymans trespassed and ordering ejectment. Mr. Graves' testimony was not in error and no prejudice occurred. We affirm the district court's decision quieting title in Mr. Childs and ejecting the Lymans from the property.