# THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 30

APRIL TERM, A.D. 2023

April 17, 2023

LITTLE MEDICINE CREEK RANCH, INC.,
a Wyoming corporation, f/k/a BURNETT
RANCH, INC.,

Appellant
(Defendant/Counterclaimant),

v.

SERGE M. D'ELIA and LILIAN C.S.L.
D'ELIA, Trustees of the d'Elia Family Trust
and WAGONHOUND LAND & LIVESTOCK
COMPANY, LLC,[1] a Wyoming limited
liability company,

Appellees
(Plaintiffs/Counterclaim Defendants).

S-22-0092

*Appeal from the District Court of Albany County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
> Paula A. Fleck, Jeffrey S. Pope, and Macrina M. Sharpe of Holland and Hart, LLP; Eric C. Rusnak, Theresa A. Roozen, Michael E. Zeliger, and Audrey H. Lo of Pillsbury Winthrop Shaw Pittman LLP. Argument by Mr. Rusnak.

---

[1] The Notice of Appeal in this case refers to Appellee as Wagonhound Land & Livestock, LLC. The caption below and in the parties' briefs interchangeably refer to Wagonhound Land & Livestock Company, LLC, with and without the word "Company." The caption in the Judgment Following Bench Trial and deeds in the record identify Appellee as Wagonhound Land & Livestock Company, LLC. We therefore amend the caption in this case and identify the Appellee as Wagonhound Land & Livestock Company, LLC.

*Representing Appellee Serge M. d'Elia and Lilian C.S.L. d'Elia:*
     Peter C. Nicolaysen and Pamala M. Brondos of Nicolaysen & Associates, P.C.;
     Timothy M. Stubson of Crowley Fleck PLLP.  Argument by Mr. Stubson

*Representing Appellee Wagonhound Land & Livestock Company, LLC:*
     Kermit C. Brown and William L. Hiser of Brown & Hiser, LLC.
     Argument by Mr. Hiser.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    This is the second appeal of an adverse possession case involving two neighboring cattle ranches—the Burnett Ranch and the Warbonnet Ranch.[2]  The Appellant, Little Medicine Creek Ranch, Inc., f/k/a Burnett Ranch, Inc., owns a ranch in Albany County that has historically been known as the Burnett Ranch.  The Burnett Ranch is enclosed by a perimeter fence.  Within that perimeter fence are three non-contiguous parcels of property (Subject Property) that are part of the Warbonnet Ranch and deeded to the Appellees—Serge and Lilian d'Elia, Trustees of the d'Elia Family Trust, and Wagonhound Land & Livestock Company, LLC.  Appellant claims it adversely possessed the Subject Property through its use of the property for grazing cattle and by maintaining the perimeter fence, which encloses the entire Burnett Ranch.  On the first appeal, we reversed the district court's entry of summary judgment in favor of the Appellees and found there were genuine issues of material fact to be resolved by the trial court. *Little Med. Creek Ranch, Inc. v. d'Elia*, 2019 WY 103, ¶ 44, 450 P.3d 222, 234 (Wyo. 2019).  After a five-day bench trial, the district court found Appellant failed to meet its prima facie case establishing the elements of adverse possession and quieted title in favor of the Appellees.  Appellant appeals and we affirm.

## ISSUES

[¶2]    There are three issues on appeal:

    I.      Did the district court commit clear error when it found the perimeter fence around the entirety of the Burnett Ranch was insufficient to meet the elements of adverse possession?

    II.    Did the district court commit clear error when it found Appellant failed to establish hostile use?

    III.    Did the district court err when it found the Burnett Ranch's use of the Subject Property was permissive?

## FACTS

**The Land**

[¶3]    This case involves three non-contiguous or isolated parcels of land in Albany

---

[2] The Burnett Ranch and Warbonnet Ranch have each changed names and ownership, and historical records often refer to the ranches by differing names and owners.  To avoid any confusion, we refer to the ranch owned by Appellant as the Burnett Ranch and the ranch owned by the Appellees as the Warbonnet Ranch.

County, Wyoming (Subject Property). The following map depicts the three parcels of property:



Parcel 1 consists of approximately 640 acres; parcel 2 consists of approximately 40 acres; and parcel 3 consists of two approximately 120-acre parcels, of which 210 acres are subject to this litigation.

**The History**

[¶4]    Over the years, the Cross family purchased smaller ranches, including the Subject Property. In 1961, William H. and Barbara Cross deeded parcels 2 and 3 to William H. Cross & Sons, Inc. In 1974, Double Crown Ranches, Inc. deeded parcel 1 to William H. Cross & Sons, Inc. From 1974 to 1984, William H. Cross & Sons, Inc. owned all three parcels of the Subject Property until the corporation was dissolved, at which time title passed to William A. (Rory) Cross, individually.

[¶5]    Rory Cross and his predecessor William H. Cross & Sons, Inc. never fenced the Subject Property because it was not contiguous to the main body of their ranch. The Subject Property was instead fenced into the Burnett Ranch. Rory's neighbors were the Burnetts. From the early 1900s, the Burnetts homesteaded much of the land that constitutes the Burnett Ranch. The Burnett Ranch deeded lands did not include the Subject Property. However, the perimeter fence around the Burnett Ranch included the Subject Property.

[¶6] Rory Cross testified when he owned the Subject Property, the Burnetts and the Crosses worked together and trailed cattle across each other's property without complaint. He testified that although he owned the Subject Property, the Burnetts occasionally used the property to graze their cattle. Rory Cross testified he never directly told the Burnetts they could use the Subject Property, but he stated he could not tell them to keep their cattle off the Subject Property because it was not separately fenced.

[¶7] In approximately 1983, the Crosses endeavored to sell their ranch, including the Subject Property. The Crosses real estate broker, John Phillips, met with Richard "Dick" Burnett—who managed the Burnett Ranch for approximately 65 years—and his wife, Lillian M. Burnett and inquired whether the Burnetts wanted to purchase the Subject Property. The Burnetts declined the offer.

[¶8] Approximately three years later, to satisfy debt, Rory Cross deeded his ranch, including the Subject Property, to Farm Credit System Capital Corporation (Farm Credit). After acquiring the ranch, Farm Credit marketed the ranch through John Phillips, the same real estate broker previously used by the Crosses. Serge d'Elia purchased the ranch, including the Subject Property, in 1987. The ranch became known as the Warbonnet Ranch.

[¶9] Mr. d'Elia owned the Warbonnet Ranch for approximately 30 years. He paid the property taxes for the entire ranch, including for the Subject Property. He hired ranch managers to maintain and operate the Warbonnet Ranch and continued to use it as a cattle operation. He also used it for hunting. Initially, Warbonnet Ranch's cattle were trailed across the Subject Property through the Burnett Ranch and placed onto the main part of the Warbonnet Ranch for grazing. While Warbonnet Ranch cattle were trailed across the Subject Property, Tom Spawn, a former ranch manager, testified the Warbonnet Ranch did not use the Subject Property for grazing because there was no fence around the property, and the location made it impractical. Mr. d'Elia and his former ranch managers, John Phillips and Tom Spawn, testified that while they did not utilize the Subject Property for grazing, they knew the Burnetts possibly utilized the grass on the Subject Property for their cattle. While they did not all witness cattle on the Subject Property, Mr. d'Elia told his ranch managers the Burnett family could utilize the grass for grazing.

**Dispute over Subject Property**

[¶10] In 2012, Mr. d'Elia decided to sell the Warbonnet Ranch. Approximately three years later, Wagonhound Land & Livestock Company, LLC (Wagonhound) entered into a lease with Mr. d'Elia and his family[3] that included an exclusive option to purchase the Warbonnet Ranch. In 2017, Wagonhound exercised its option to purchase the Warbonnet

---

[3] Mr. d'Elia transferred portions of the Warbonnet Ranch to the d'Elia Family Trust and to his son. The Trustees of the Trust and his son entered into the agreement.

3

Ranch, including the Subject Property. Around this same time, Wagonhound approached John Burnett about purchasing the Burnett Ranch. After meeting with John Burnett, Wagonhound followed up with a letter thanking him for meeting about the possible purchase of the Burnett Ranch. As part of its diligence in purchasing the Warbonnet Ranch, Wagonhound asked in its letter if Mr. Burnett would confirm that he had no intention of claiming ownership over the Subject Property within the Burnett Ranch perimeter. Mr. Burnett never responded to the letter; instead, he shared the letter with Shane Cross, whose father, Richard Cross, was leasing the land on the Burnett Ranch.[4]

[¶11] In 2000, the Burnetts sold their cattle to avoid foreclosure. The Burnetts no longer grazed cattle on the Burnett Ranch, instead, they leased the ranch to other ranchers for grazing cattle. Beginning in 2008, Richard Cross leased the Burnett Ranch exclusively for "grazing purposes." The written lease agreements did not set forth whether the Crosses could graze cattle on the entire Burnett Ranch deeded lands or address the Subject Property, but Shane Cross testified they used all of the land inside the perimeter fence of the Burnett Ranch. The written lease agreements provided the Burnett Ranch was responsible to pay all taxes and assessments due on the "Burnett Ranch, Inc. deeded land, State and Federal," and to maintain all fences.

[¶12] When Shane Cross learned Wagonhound purchased the Warbonnet Ranch, including the Subject Property, and was interested in purchasing the Burnett Ranch, he asked Wagonhound whether it would consider leasing the Burnett Ranch to the Crosses if the purchase of the Burnett Ranch went through. Wagonhound informed Shane Cross it would not continue to lease the land to the Crosses if it acquired the Burnett Ranch. As a result, the Crosses sought to purchase the Burnett Ranch. Shane Cross also e-mailed John Burnett case law on adverse possession and a draft letter stating the Burnett Ranch owned the Subject Property.

[¶13] A bidding war to purchase the Burnett Ranch ensued between Wagonhound and the Crosses, and ultimately the Burnetts sold the Burnett Ranch to the Crosses. In the fall of 2016, after John Burnett agreed to sell the Burnett Ranch to the Crosses, Wagonhound attempted to enter the Burnett Ranch to survey the Subject Property, but John Burnett and the Crosses denied access. The Crosses further informed Wagonhound they intended to take ownership of the Subject Property through a claim of adverse possession. Also, as part of the sale, the Burnetts signed and recorded stranger quitclaim deeds[5] for the Subject Property, which created a cloud on the title to the Subject Property.

---

[4] Richard Cross is Rory Cross's brother and Shane Cross is Rory Cross's nephew. As discussed above, Rory Cross originally owned the Subject Property until approximately 1986.

[5] Stranger deeds are deeds executed by a purported grantor not in the chain of record title. *See Conway v. Miller*, 232 P.3d 390, 397 (Mont. 2010) ("Strangers to the deed are those who are not parties to it."); *see also Simpson v. Kistler Inv. Co.*, 713 P.2d 751, 754–61 (Wyo. 1986).

[¶14]   In February 2017, the Trustees of the d'Elia Family Trust filed a complaint against the Appellant for declaratory judgment and to quiet title to the Subject Property.  The Trustees argued Appellant created a cloud on the title to the Subject Property and requested the district court adjudicate the Trustees' right, title, and interest in the Subject Property.  Wagonhound subsequently entered into an addendum to its purchase option with the Trustees.  The addendum recognized the Trustees filed a civil action seeking to resolve the Burnett Ranch's adverse possession claim and to quiet title in the Subject Property.  Because the civil action would not be completed prior to Wagonhound closing on the purchase of the Warbonnet Ranch, the parties amended the purchase option and agreed to hold back funds from the total purchase price of the Warbonnet Ranch.  Wagonhound agreed to keep the funds in a separate account and if title to the Subject Property was quieted in favor of the Trustees and Wagonhound, it agreed the funds would be released to the Trustees.  Upon release of the funds, the Trustees agreed to quitclaim any interest in the Subject Property to Wagonhound.

[¶15]   The Trustees filed an amended complaint and added Wagonhound as a party.  The Appellant answered and counterclaimed for adverse possession of the Subject Property.  Appellant and Appellees moved for summary judgment, and the district court entered judgment as a matter of law in favor of the Appellees.  The district court found Appellant failed to establish a prima facie case of adverse possession.  Appellant appealed and we reversed and remanded the matter for trial. *Little Med. Creek Ranch, Inc.*, 2019 WY 103, ¶ 11, 450 P.3d at 227.  On remand, the district court held a five-day bench trial and entered judgment in favor of the Appellees.  After considering the evidence, the district court found Appellant failed to establish its use of the property was open, notorious, exclusive, continuous, and hostile.  This appeal followed.

## STANDARD OF REVIEW

[¶16]   We review a district court's decision following a bench trial using the following standard:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict.  While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record.  Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence.  Findings of fact will not be set aside unless they are clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  In considering a trial court's factual findings, we assume that the

evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed *de novo*.

*Lyman v. Childs*, 2023 WY 16, ¶ 10, 524 P.3d 744, 751 (Wyo. 2023) (quoting *Fuger v. Wagoner*, 2020 WY 154, ¶ 8, 478 P.3d 176, 181 (Wyo. 2020)); *see also Addison v. Dallarosa-Handrich*, 2007 WY 110, ¶ 8, 161 P.3d 1089, 1091 (Wyo. 2007).

## DISCUSSION

[¶17] Appellant claimed it adversely possessed the Subject Property and sought to quiet title to it. The district court found Appellant failed to prove it adversely possessed the Subject Property and quieted title in favor of the record titleholders, Appellees. On appeal, Appellant challenges the district court's findings and argues the district court erred by finding in favor of the record title holder.

[¶18] The purpose of a statutory action to quiet title is to determine in one comprehensive action all adverse and conflicting claims to real property. Wyo. Stat. Ann. § 1-32-201 (LexisNexis 2021); *Clay v. Mountain Valley Mineral Ltd. P'ship*, 2015 WY 84, ¶ 20, 351 P.3d 961, 968 (Wyo. 2015). To establish adverse possession of real property, "'the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title.' Possession must be for the statutory period, ten years." *Clay*, ¶ 21, 351 P.3d at 968 (quoting *Addison*, 2007 WY 110, ¶ 11, 161 P.3d at 1091). "The requirement that an adverse claimant's possession be open, notorious, and hostile is aimed at putting the property's record owner on notice of the adverse claim." *White v. Wheeler*, 2017 WY 146, ¶ 30, 406 P.3d 1241, 1250 (Wyo. 2017). An open, notorious, and hostile possession or use "must be so incompatible with or so in defiance of the rights of the true owner that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant *intends* to possess the property as his own, and that the owner should take some action to protect his title." *Id.* at ¶ 17, 406 P.3d at 1247 (quoting *Galiher v. Johnson*, 2017 WY 31, ¶ 20, 391 P.3d 1101, 1106 (Wyo. 2017)).

[¶19] "An adverse possession claim creates several shifting presumptions." *Lyman*, 2023 WY 16, ¶ 12, 524 P.3d at 751. "A presumption of ownership first rests with the record title holder unless and until the adverse claimant makes out his prima facie case of adverse possession." *Id.* (citing *Kudar v. Morgan*, 2022 WY 159, ¶ 14, 521 P.3d 988, 993 (Wyo. 2022)). "Once an adverse possession claimant makes the required *prima facie* showing, the presumption shifts to one in favor of the adverse possession claimant." *White*, 2017

WY 146, ¶ 18, 406 P.3d at 1247. "When there is no clear showing to the contrary, a person who has occupied the land . . . in a manner plainly indicating that he has acted as the owner [for a period of ten years], is entitled to a presumption of adverse possession." *Id.* (quoting *Osuch v. Gunnels*, 2017 WY 49, ¶ 10, 393 P.3d 898, 901 (Wyo. 2017)); Wyo. Stat. Ann. § 1-3-103 (LexisNexis 2021). The burden then shifts to the opposing party "to explain or rebut the claim by showing the use was permissive." *Lyman*, ¶ 12, 524 P.3d at 751–52; *White*, ¶ 18, 406 P.3d at 1247. "[I]f a claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession." *White*, ¶ 18, 406 P.3d at 1247.

[¶20] The district court found Appellant "failed to meet the elements for adverse possession for the requisite time period to sustain their claim over [the Subject Property]." Appellant challenges the district court's findings and argues it sufficiently raised the flag of hostile use and overcame the presumption of permissive use. Appellant contends it established adverse possession through its perimeter fence, its control over the Subject Property, and its use of the Subject Property for grazing cattle.

> I. ***The district court's decision the perimeter fence and control of access to the Burnett Ranch did not demonstrate open, notorious, and hostile use of the Subject Property was not clearly erroneous.***

[¶21] Appellant argues the district court erred as a matter of law by concluding the perimeter fence and control of access to the Burnett Ranch did not demonstrate visible, open, notorious, and hostile use of the Subject Property. Appellant contends the district court should have concluded as a matter of law that building and maintaining the perimeter fence around the entirety of the Burnett Ranch and exercising control over access to the lands enclosed within the Burnett Ranch is sufficient to meet the elements of adverse possession. We disagree.

[¶22] "We have recognized that adverse possession can be established by the pasturing of livestock during the growing season within a **substantial enclosure**," but when that enclosure is essential to the claim of adverse possession the question becomes a factual issue for the trier of fact. *Davis v. Chadwick*, 2002 WY 157, ¶¶ 11–12, 17, 55 P.3d 1267, 1271–74 (Wyo. 2002) (emphasis added). The fact finder must determine whether the enclosure was sufficient to fly the flag over the land and put the true owner on notice that the property is held under an adverse claim of ownership. *Id.* Our case law demonstrates the determination as to whether the fence sufficiently put the owner on notice of adverse possession or meets the elements of adverse possession is a fact-intensive inquiry. *See e.g., id.* (declining to delineate the scope of what constitutes a substantial enclosure but finding a boundary fence sufficiently put the record title holder on notice of the adverse claim); *Galiher v. Johnson*, 2018 WY 145, ¶ 15, 432 P.3d 502, 510 (Wyo. 2018) ("Considering the nature and extent of the material facts associated with the elements of

a claim of adverse possession, this Court considers an adverse possession action to be 'peculiarly factual in nature.").

[¶23]   The district court found "the perimeter of the Burnett Ranch is fenced except for a section where the rough terrain makes fencing impossible."  It found the Subject Property was "unfenced within the Burnett Ranch."  The district court found the perimeter fence does "not specifically fence in (or out) the disputed parcels" and "no fencing involving the disputed parcels . . . are indicative of use or ownership."  It held the Subject Property was not fenced in a manner that put the record title owner on notice of any adverse claim, and any act of maintaining the boundary fence by the Burnett Ranch did not establish a prima facie case of adverse possession.  After reviewing the record, we cannot say the district court's findings regarding the Burnett Ranch perimeter fence are clearly erroneous.

[¶24]   "Enclosing land in a fence may be sufficient" to put the record title holder on notice of the adverse claim, but the claimant "must still establish that his use of the [disputed] property was open, notorious, exclusive, continuous and hostile." *White*, 2017 WY 146, ¶¶ 20–21, 406 P.3d at 1247; *Helm v. Clark*, 2010 WY 168, ¶ 10, 244 P.3d 1052, 1058 (Wyo. 2010).  "[V]isibility of [a] fence alone does not establish the . . . showing of open, notorious, and hostile possession" required for an adverse possession claim. *White*, ¶ 34, 406 P.3d at 1250.  Pasturing livestock within a substantial enclosure during the growing season can establish open, notorious, and hostile possession. *Farella v. Rumney*, 649 P.2d 185, 186 (Wyo. 1982); *Helm*, 2010 WY 168, ¶¶ 10–11, 244 P.3d at 1058.  "The term 'substantial enclosure' does not refer to the area enclosed by a fence." *Davis*, 2002 WY 157, ¶ 12, 55 P.3d at 1271.  Instead, the term "substantial enclosure" refers "to the extent and nature of the enclosure of the disputed property." *Id.*  "[S]ubstantial enclosure means whether or not the land adversely claimed is enclosed in a manner that puts the title owner on notice of the . . . adverse claim of ownership and the extent of that claim (i.e., over what specific lands the adverse claimant is asserting ownership)." *Id.* at ¶ 12, 55 P.3d at 1271–72; *Addison*, 2007 WY 110, ¶ 15, 161 P.3d at 1092.  The presence, location, purpose, and type of fencing (for convenience, casual, or designed) are important factual issues "when an adverse possession claimant uses the disputed property for grazing livestock." *Braunstein v. Robinson Fam. Ltd. P'ship*, LLP, 2010 WY 26, ¶ 18, 226 P.3d 826, 834–35 (Wyo. 2010).  A material fact that must be considered by the fact finder and weighed along with all the other circumstances is "whether the disputed property was separately enclosed with its own fence and the adverse claimant placed its grazing livestock within that fenced enclosure[.]" *Id.*

[¶25]  The perimeter of the Burnett Ranch was fenced sometime between 1960–1962.  Appellant admits the Burnett Ranch is enclosed by a perimeter fence except for those areas where the terrain makes fencing impossible.  It further admits "[t]he parcels comprising the Subject Property are not separately fenced within the Burnett Ranch."  A landowner in the area and former lessee of the Burnett Ranch testified the fence line rarely follows the property line because of the terrain.  He testified the object is to keep the fences up

and the cows on respective ranches and following the property line in the area makes it difficult to keep fences standing.

[¶26] In 2001, after the death of Dick Burnett, John Burnett, as the personal representative of Dick Burnett's Estate, obtained an appraisal of the Burnett Ranch from Hastings & Associates, Inc. In 2013, John Burnett obtained a subsequent appraisal of the Burnett Ranch from Hastings & Associates, Inc. after the death of his mother, Lillian Burnett. Both appraisals noted, and Mr. Burnett agreed, landowners in the area typically trade land use with adjoining neighbors to facilitate and maximize the ability to use the forage. The 2013 appraisal stated: "Because of the terrain, fences can be hard to build and maintain and may not be on the exact property lines." Mr. Burnett testified in his experience the perimeter fence is not on the exact property lines.

[¶27] John Phillips, the real estate broker that worked for the Crosses and then Farm Credit Systems to market the Warbonnet Ranch, testified he understood Dick Burnett built the perimeter fence to keep cattle where they were supposed to be. After marketing the Warbonnet Ranch, John Phillips managed the Warbonnet Ranch for Mr. d'Elia. Mr. Phillips testified when he managed the Warbonnet Ranch in the 1980s, the natural progression of the cattle was to end up on the Burnett Ranch, and so they would trail the cattle across the Subject Property and the Burnett Ranch. He testified he spoke with Dick Burnett a few times a year about fencing and cattle. He stated an elk herd would knock the perimeter fence down, so both the Burnett Ranch and the Warbonnet Ranch would try to keep the perimeter fence up as much as possible to keep the cattle contained on the respective ranches. He further testified both Mr. Burnett and Mr. d'Elia worked on the perimeter fence as much as possible to keep cattle in the appropriate pastures.

[¶28] Tom Spawn, a former Warbonnet Ranch manager, testified the Warbonnet Ranch never fenced parcel 2 of the Subject Property, even though it ran up to the ranch's BLM allotment because adding that additional fence would cause a "bottleneck for cattle to get into" and create a natural funnel that would make it almost impossible to trail the cattle back out. He testified the cost of fencing and the amount of grass on the Subject Property made it impractical to fence and graze Warbonnet Ranch's cattle on the Subject Property. He also testified that the landowners to the south of parcel 3 wanted to rebuild a portion of the perimeter fence separating their ranch from the Burnett Ranch on a location that would require less fencing. The landowners approached Tom Spawn to get permission to rebuild the fence in a different location, but the Warbonnet Ranch required the fence to be built on the existing fence line.

[¶29] In *Rutar Farms & Livestock, Inc. v. Fuss*, the claimant contended "the existence of a fence . . . together with the fact their cattle grazed on the disputed tracts, constituted open and notorious intent to adversely possess the disputed tracts." 651 P.2d 1129, 1132–33 (Wyo. 1982). We disagreed those facts alone established the necessary elements of notorious, exclusive, and hostile possession under a claim of right for adverse possession

9

and held the district court's decision was supported by substantial evidence. *Id.* at 1132–34. The district court found only portions of the fence on the property indicated a boundary, and not all the fencing involved was a boundary fence. *Id.* We agreed with the district court's finding that an irregular fence following the general course of a river and not the property line was a fence of convenience or a control fence rather than a fence establishing the boundary line. *Id.* Based on these facts, we concluded the claimant never enclosed the disputed lands themselves, and the fence did not establish open, notorious, and hostile intent to adversely possess the disputed lands. *Id.*

[¶30] In *Davis*, we affirmed the district court's finding the fence at issue was a substantial enclosure sufficient to put the record owner on notice of the adverse possessor's claim. 2002 WY 157, ¶ 12, 55 P.3d at 1272. We found the evidence established the "parties believed the fence was the true boundary for at least 40 years" and the testimony indicated the existing fence appeared to constitute a boundary. *Id.* at ¶ 17, 55 P.3d at 1274. Based on this evidence, we concluded the district court's findings were not clearly erroneous and affirmed. *Id.*

[¶31] In *Addison*, we found the evidence was sufficient to support the district court's conclusion the fence was not a substantial enclosure putting the title owner on notice of the adverse claim. 2007 WY 110, ¶¶ 9–21, 161 P.3d at 1091–93. We found the evidence established "the fence did not follow a straight section line but followed the topography of the area, zig-zagging around the bottom of a rough, rocky hill, rather than going in a straight line over the hill," which indicated the fence did not follow the true boundary line. *Id.* at ¶ 20, 161 P.3d at 1093. We further found the evidence showed the fence originally separated two pastures both owned by the same ranch company, which "showed that for the first one hundred years of its existence the fence was not intended to delineate a boundary line between properties." *Id.* at ¶ 21, 161 P.3d at 1093. We found the irregular course of the fence and the lack of any indication the fence was intended to mark or follow a boundary supported the district court's decision. *Id.*

[¶32] The evidence presented in this matter contrasts with *Davis* and is more analogous to *Rutar Farms & Livestock, Inc.* and *Addison*. After reviewing the record, we cannot say the district court's decision is clearly erroneous. Here, the Appellants concede the Subject Property is not separately fenced within the Burnett Ranch. The testimony and the Burnett Ranch's own appraisals indicated the perimeter fence was not on the true boundary line because of the terrain, and neighbors traded land use to facilitate and maximize the ability to use the forage. Both the Burnett Ranch and the Warbonnet Ranch maintained the perimeter fence to ensure they kept their respective cattle contained in certain areas on the particular ranches. The landowners to the south of parcel 3 approached the Warbonnet Ranch before replacing the fence separating their ranch from the Burnett Ranch. Based on this evidence, we cannot say the district court's finding the disputed lands were not enclosed in a manner to raise the flag and put the title owner on notice of an adverse claim of ownership to the Subject Property is clearly erroneous. The record supports the district

10

court's finding that the Appellant's maintenance of the perimeter fence and control of access to the Subject Property did not demonstrate a substantial enclosure or establish the necessary elements of adverse possession to meet the claimant's prima facie case.

## II. *The district court's finding that Appellant did not establish hostile use of the Subject Property by the perimeter fence and its minimal use for grazing was not clearly erroneous.*

[¶33] Appellant challenges the district court's finding "nothing was so hostile or significant about [the Burnett Ranch] grazing activities or perimeter fencing as to put the Warbonnet Ranch owners on notice of any assertion of ownership or use so incompatible with the rights of the owners of [the Subject Property] that provided clear notice that their ownership was in jeopardy—at least not until 2016 when the Burnett Ranch was sold . . . and [the] Warbonnet Ranch was denied access in writing to the Subject [Property]." Appellant argues the district court erred as a matter of law and misstated the standards for showing hostility by finding no hostile act took place until 2016. Appellant argues hostility does not require an overt act. It argues that the use of the Subject Property by the Burnett Ranch inside the perimeter fence for seasonal grazing established the hostile use element of adverse possession as a matter of law. We disagree.

[¶34]  We defined the hostile possession or use element as:

> [O]ne that amounts to an assertion of ownership adverse to that of the record owner. It must be so incompatible with or so in defiance of the rights of the true owner that an ordinarily prudent owner would be on clear notice that his ownership is in jeopardy, that the claimant *intends* to possess the property as his own, and that the owner should take some action to protect his title.

*O'Hare v. Hulme*, 2020 WY 31, ¶ 19, 458 P.3d 1225, 1233–34 (Wyo. 2020) (quoting *White*, 2017 WY 146, ¶ 17, 406 P.3d at 1247). "The term 'hostile' in the context of adverse possession is not to be interpreted as ill will or to require action akin to lining up Spartans at Thermopylae to prevent the return of one holding legal title; rather," it is an action by the claimant that gives clear notice to the legal owner that his ownership is in jeopardy, and he must act to protect his title within the statutorily prescribed period. *Graybill v. Lampman*, 2014 WY 100, ¶ 36, 332 P.3d 511, 522 (Wyo. 2014); *Rutar Farms & Livestock, Inc.*, 651 P.2d at 1134. This "requirement of notice is fundamental to a claim of adverse possession." *O'Hare*, ¶ 19, 458 P.3d at 1234.

[¶35]  "[A] claimant cannot establish a *prima facie* case by relying solely on his testimony as to his subjective hostile intent." *O'Hare*, 2020 WY 31, ¶ 19, 458 P.3d at 1234. Instead, "[h]e must introduce evidence that such intent was objectively made manifest by his

observable words or actions." *Id.*; *see also Lyman*, 2023 WY 16, ¶ 19, 524 P.3d at 753 ("Objective and manifest intent, rather than subjective intent, is required to show hostile possession by the adverse claimant."). "It is well established that mere possession is not a sufficient basis for claim of title by adverse possession." *Rutar Farms & Livestock, Inc.*, 651 P.2d at 1134. Instead, the "possession must be clear, distinct, and unequivocal [and] must convey the clear message that the possessor intends to possess the land as his or her own." *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522. "Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully." *Murdock v. Zier*, 2006 WY 80, ¶ 10, 137 P.3d 147, 150 (Wyo. 2006). To meet the hostility requirement, the act or possession must demonstrate the claimant "unfurl[ed] his flag on the land, and ke[pt] it flying, so that the owner [could] see . . . an enemy . . . invaded his domains, and planted the standard of conquest." *Stansbury v. Heiduck*, 961 P.2d 977, 979 (Wyo. 1998); *Rutar Farms & Livestock, Inc.*, 651 P.2d at 1134.

[¶36] Wyoming is a fence-out state, meaning cattle are permitted to run at large and wander upon and graze on unenclosed lands of a private owner. *Little Med. Creek Ranch, Inc.*, 2019 WY 103, ¶ 30, 450 P.3d at 231; *Braunstein*, 2010 WY 26, ¶ 18, 226 P.3d at 834–35. "Under the operation of the [fence-out doctrine], it is incumbent upon a land owner, in order to prevent domestic animals lawfully at large from wandering and trespassing thereon, to properly enclose his land." *Braunstein*, ¶ 18, 226 P.3d at 834–35. If a landowner allows his property "to remain unenclosed, and the cattle of others, lawfully at large, wander upon and [graze] it, the owner of such cattle will not be guilty of an actionable trespass." *Id.* The implication of the fence-out doctrine and whether grazing on the disputed land by the claimant constitutes hostile use or possession is a question of fact to be determined by the trier of fact when there is more than one reasonable inference. *Little Med. Creek Ranch, Inc.*, ¶¶ 31–32, 450 P.3d at 231 ("When the facts support more than one reasonable inference, the fence-out doctrine cannot establish permissive use as a matter of law."); *Galiher*, 2018 WY 145, ¶ 18, 432 P.3d at 511 ("When there is evidence to support a claimant's *prima facie* showing, but there is also evidence to the contrary, the factual dispute becomes a question of weight and credibility for the trier of fact.")(internal quotation marks omitted); *A.B. Cattle Co. v. Forgey Ranches, Inc.*, 943 P.2d 1184, 1188 (Wyo. 1997) ("The determination of the facts which lead to either the presumption of adverse and hostile use or the presumption of permission are within the prerogative of the trial court.").

[¶37] While not dispositive or exhaustive, "[i]n cases in which the adverse possession claimant rests its claim on the grazing of livestock on the disputed property, material facts [for the trier of fact to consider] include:

- Whether the property is suitable for grazing and pasturage;

12

- Whether the grazing livestock were placed on the adverse claimant's own lands and then roamed freely or strayed onto the disputed property;

- Whether the adverse claimant purposely drove its livestock onto the disputed property and kept them there each year during the full period of the growing season;

- Whether the adverse claimant pastured its grazing livestock on the disputed property sporadically or for the full period of each growing season;

- Whether the disputed property was separately enclosed with its own fence and the adverse claimant placed its grazing livestock within that fenced enclosure; and

- The number of such grazing livestock using the disputed property for the full period of each growing season.

*Braunstein*, 2010 WY 26, ¶ 18, 226 P.3d at 835.

[¶38] Here, the district court considered these factors and found no dispute that the Burnett Ranch "had actual possession of the disputed property, particularly by virtue of the unique locations and enclosure of the Subject Propert[y] within the boundaries of the Burnett fence line." The district court found the evidence indicated "the Burnett Ranch, by and through its various owners and lessees, made continuous though sporadic, unspecified use of the disputed parcels through the occasional grazing of cattle." However, it found there was no evidence of targeted grazing on the Subject Property prior to 2013, and any targeted grazing was limited until 2017. It found the testimony indicated the cattle wandered the entirety of the Burnett Ranch and not on specific parcels due to the lack of any interior fencing. The district court determined the Burnett Ranch never established it provided any notice of a claim of adverse possession over the Subject Property until 2016 when John Burnett generally denied Warbonnet Ranch access to the Subject Property and Shane Cross asserted a claim of adverse possession.

[¶39] Appellant argues the district court erred and it established notice and hostile intent by using the disputed property inside the Burnett Ranch perimeter fence for seasonal grazing. Appellant contends allowing its cattle to seasonally graze within the perimeter fence on the Burnett Ranch and the existence of roads on the Subject Property was sufficient to provide notice and meet its prima facie case of adverse possession. Our case law supports the district court's conclusion that these actions were insufficient to provide actual notice to the record owner and establish hostile intent.

13

[¶40]   In *Kimball v. Turner*, a landowner received a land patent from the United States and erected a fence along the southern boundary of his property, enclosing approximately 7.3 acres of land owned by another. 993 P.2d 303, 304 (Wyo. 1999).  On an action to quiet title to the 7.3 acres, the district court found in favor of the adverse possessor on 1 acre of the land because he built a house and a fence on that acre. *Id.* at 305–07.  The district court found building a house and a fence demonstrated hostile use and was sufficient to meet the elements of adverse possession. *Id.*  With respect to the rest of the approximately 6.3 acres, the district court determined the acres were not adversely possessed because a perimeter fence and using the land to graze cattle was not sufficient to provide actual notice to the record owner of any claim of adverse possession. *Id.* at 307.  Testimony indicated the landowners never treated the fence as a boundary fence, but instead used the fence to keep cattle contained and separated. *Id.* at 306–07.  Testimony also indicated the landowners knew the fence did not follow the property lines. *Id.*  We affirmed the district court's decision and found it was not contrary to the great weight of the evidence. *Id.* at 306–09.

[¶41]   In *Rutar Farms & Livestock, Inc.*, the evidence indicated cattle of the adverse possessor grazed on the disputed land, but it was not clear how often or whether the cattle were purposely placed on the land or strayed onto it. 651 P.2d at 1132–34.  Of significance, the adverse possessor "did not assert ownership of the disputed lands" when questioned about the lands by third parties. *Id.* at 1135.  We held that to establish title through adverse possession, the claimant's possession must be with the intent to assert a claim of adverse possession. *Id.*  We affirmed the district court's decision and found the claimant's actions did not establish any intent to adversely possess the land. *Id.* at 1135–36.  We further found the claimant's minimal use of the disputed land by grazing cattle "fell far short of alerting the record owners that title to their deeded land was in jeopardy." *Id.*

[¶42]   Burnett Ranch shareholders testified they knew the Subject Property was deeded and owned by someone else.  One shareholder testified he never intended to claim any interest or ownership over the Subject Property, and he was never aware of any intention by the Burnetts to claim ownership in the Subject Property.  Instead, he testified the Burnetts used the property with permission and the Burnetts had previously discussed the possibility of negotiating access with the record owners if they ever attempted to fence off the Subject Property.  John Burnett testified the Subject Property was always in the Burnett Ranch's possession because of the location within the perimeter fence, but the Burnetts never made an assertion it owned the Subject Property.

[¶43]   The Burnett Ranch was given several chances to assert ownership over the Subject Property and provide notice to the record title holder.  In 2001 and 2013, John Burnett toured the Burnett Ranch with an appraiser and subsequently obtained appraisals.  The appraisals did not list the Subject Property as part of the Burnett Ranch and instead specifically identified the three parcels as "private uncontrolled" and not included within

14

the Burnett Ranch deeded boundary. John Burnett never objected to the appraisals not listing the Subject Property as part of the Burnett Ranch. In approximately 2001, John Burnett, on behalf of Burnett Ranch, signed and reviewed an application for a small mine permit on the Burnett Ranch. Parcel 1 of the Subject Property was within a one-half-mile radius of the proposed mine. On the adjudication information for the mining application, the application listed the owner of parcel 1 as the d'Elia Family Trust. Mr. Burnett testified he had no objection or dispute with the application listing the d'Elia Family Trust as the owner of parcel 1.

[¶44] In November 2015, the purchasers of the Warbonnet Ranch approached John Burnett about purchasing the Burnett Ranch. After the meeting with John Burnett, Mark Norem, the purchaser's real estate broker, wrote a letter asking for the Burnett Ranch to acknowledge the d'Elias owned the Subject Property. Shortly thereafter, Shane Cross, a subsequent purchaser of the Burnett Ranch, e-mailed John Burnett case law describing adverse possession and provided him with a draft letter claiming ownership over the Subject Property to send to the real estate broker. John Burnett never responded to the letter and never did anything to provide notice he was asserting ownership over the Subject Property. Approximately three months later, John Burnett wanted to clarify what land the Burnett Ranch owned. He recorded an affidavit with the Albany County Clerk's Office listing the property owned by the Burnett Ranch. Mr. Burnett did not list the Subject Property on this affidavit.

[¶45] John Burnett testified the Burnett Ranch used the Subject Property for grazing and running cattle. Mr. Burnett did not provide any testimony as to whether the cattle were intentionally placed on the Subject Property, or whether the cattle roamed freely within the perimeter of the Burnett Ranch and wandered onto the Subject Property. A shareholder of the Burnett Ranch testified Burnett Ranch cattle used parcel 1 because there was no fence around the parcel, but the cattle did not utilize parcels 2 and 3 because the parcels were located away from where the cattle grazed. Shane Cross testified when the Crosses were leasing the Burnett Ranch they grazed cattle on the parcels, but the Crosses did not have a written grazing program that predated 2017. Testimony indicated salt licks were placed around the Burnett Ranch, including on parcel 1, but cattle were never intentionally placed and maintained on the Subject Property. Instead, the testimony indicated cattle were pushed through a gate on the Burnett Ranch and then were grazed to utilize all the grass within the entire perimeter fence of the Burnett Ranch.

[¶46] The evidence supports the Burnett Ranch never claimed or intended to claim the Subject Property as its own. The minimal use of the Subject Property by the Burnett Ranch and its lessees supports the district court's decision that the Burnett Ranch did not raise the flag in a sufficient manner to put the record owner on notice the title to their deeded land was in jeopardy. *See, e.g.*, *Lyman*, 2023 WY 16, ¶¶ 42–43, 524 P.3d at 757–58 (finding the adverse possessor's failure to assert ownership over the disputed property when given multiple chances sufficiently supports the district court's determination there

was no actual notice). Upon review of the record, we find the district court's decision is supported by sufficient evidence. The district court did not commit clear error when it found Appellant failed to establish hostile possession.

### III. Ownership is Presumed in Favor of the Record Title Holder.

[¶47] The district court found Appellant's claim of adverse possession also failed because the evidence supported an inference of permissive use. Appellant argues the district court erred as a matter of law. Appellant suggests "where the record evidence shows that the adverse possession claimant neither asked for [n]or received permission from anyone to use a disputed piece of land, a court cannot remedy that lack of evidence with an assumption . . . the deed holders tacitly granted permission by their silence." Appellant contends the Appellees failed to satisfy their burden to show permissive use.

[¶48] As discussed above, "unless and until the adverse claimant makes out his prima facie case" there is "a presumption in favor of the record title holder." *Kudar*, 2022 WY 159, ¶ 14, 521 P.3d at 993; *Little Med. Creek Ranch, Inc.*, 2019 WY 103, ¶ 18, 450 P.3d at 228. Appellant was required to make prima facie showing his use of the Subject Property was actual, open, notorious, exclusive, and continuous, which such use conveyed the clear message the Appellant intended to possess the Subject Property as its own. *Kudar*, 2022 WY 159, ¶ 15, 521 P.3d at 993; *Graybill*, 2014 WY 100, ¶ 36, 332 P.3d at 522. We found the district court's decision the Appellant failed to meet its prima facie showing of adverse possession was not clearly erroneous. *See, e.g.*, *Lyman*, 2023 WY 16, ¶¶ 42–43, 524 P.3d at 757–58. The presumption of ownership never shifted from the record title holder, and Appellees were not required to explain or rebut Appellant's claim of adverse possession through a showing of permissive use. *Id.* at ¶ 12, 524 P.3d at 751–52. We therefore do not address the Appellant's contentions related to the district court's findings of permissive use. *Rutar Farms & Livestock, Inc.*, 651 P.2d at 1136 (declining to address permissive use after finding the appellant never made a prima facie showing its "casual use of the disputed lands was open, notorious, exclusive, [or] in a manner plainly indicating [it was] acting as owners [of the disputed lands].").

## CONCLUSION

[¶49] The district court's finding Appellant failed to meet its prima facie showing of adverse possession through a perimeter fence around the entirety of the Burnett Ranch, its control to the non-contiguous parcels, and its minimal use of the Subject Property for grazing was not clearly erroneous. Because Appellant failed to establish a prima facie case of adverse possession, the burden never shifted to Appellees to show permissive use. We therefore do not address Appellant's contentions about permissive use. We affirm the district court's decision to quiet title in the Appellees.